In the

# United States Court of Appeals

## For the Seventh Circuit

No. 04-2589

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES O'NEILL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 CR 802—**Matthew F. Kennelly**, *Judge.*

ARGUED JANUARY 9, 2006—DECIDED FEBRUARY 10, 2006

Before POSNER, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Mario Morales was a crooked Chicago police officer who soiled his badge by ripping off drug dealers. The means to that end—described in an indictment alleging a federal RICO violation, *see* 18 U.S.C. § 1962(d)—were fairly simple, and for our purposes we recount just one of his brazen acts of criminality.

On a May day in 2001, Morales, cloaked in the trappings of a narcotics officer—police badge around his neck and service revolver in hand—entered the residence of a Chicago drug dealer named Jerome Carman. Morales had two nonpolice-officer cohorts with him, James O'Neill (the defendant in this case) and Gerald Cooper. Morales, O'Neill,

and Cooper proceeded to relieve Carman of more than 100 kilograms of marijuana and $10,000 in cash. Morales got most of what was obtained.

Eventually, Morales, O'Neill, Cooper, and two others were charged in a superseding indictment with a bevy of charges. Morales ultimately entered a guilty plea to two counts: RICO conspiracy (count 1) and possessing a firearm during and in relation to a drug trafficking crime (count 9). He was sentenced to 210 months on the racketeering count and a consecutive 84 months on the gun charge, a total of 294 months.

The government, believing that O'Neill's substantial cooperation was critical to its case against Morales, didn't want him to receive a stiff (Morales-type) sentence. That cooperation, among other things, included wearing a wire while meeting several times with an armed Morales. Accordingly, a negotiated lock-in guilty plea under Rule 11(e)(1)(C) of the Federal Rules of Criminal Procedure was agreed to. The agreement, upon O'Neill's guilty plea to the two same charges that Morales was convicted under, called for a total sentence of 124 months. Unfortunately for O'Neill, the judge balked. He said:

> I will tell you that I am inclined not to agree to have the sentence bound by the specific sentence you have. I am not saying that I would not ultimately impose that sentence. It is possible that I might impose that sentence, and it is possible that I might be persuaded that that is the appropriate sentence. But I don't think I am willing to agree to a plea agreement that says that is the only sentence I can impose.

> It is really a question—as I said, at the outset, it is really a question of—I don't have any quarrel with the proposition that Mr. O'Neill should get credit and potentially very significant credit for what he has done in assisting the government, wearing the wire and

being willing to testify against the people in this case, enabling you to charge new people in the case, enabling you in part to go after other people who aren't even in this case and so on, but I object to a provision which basically says this is the exact sentence you have to impose. So I am not going to go along with that provision.

The judge then told O'Neill that he could back out of the plea deal, adding:

As I said, I have no quarrel with the 5K1.1 motion, and that motion, I will tell you, unless I hear something between now and when you come back that I have not heard yet, that motion will be granted, and it is simply a question of deciding how much of a reduction that Mr. O'Neill would get as a result of that.

Should it be the approximately 100 months off . . . the low end, or should it be something lesser than that? Quite frankly, I don't think it would be greater than that, but should it be 100 months or should it be something less? In fact, I can't imagine circumstances in which it would be greater than that, I will just tell you that.

But I am not ruling out the possibility that I would agree to that sentence after I, you know, gave you a chance to give me another pitch for that. But unless this is rewritten in a way that gives me leeway in making my own determination of how much of a decrease should be given, then I am not going to go along with it.

So I am—I don't know if the word is rejecting or disagreeing. I am disagreeing or rejecting the term of the particular term of the plea agreement that provides that the sentence will be 124 months. I am not rejecting the part that provides for a departure under 5K1.1, but

you are going to have to decide on your end what it is you want to do at this point.

   Rebuffed by the judge, the parties returned to the drawing board. Three weeks later the case was again in court, and the judge was advised that the parties were negotiating in an attempt to draft a plea agreement that would be acceptable to the court. During this proceeding, the judge observed:

I will tell you this. I know this isn't your problem, but to the extent you have a problem, I don't have a problem with there being a low end on it, okay. But what I do have a problem with is something that says that it has got to be this or this or, you know, somewhere in here.

Eventually responding, O'Neill's counsel observed:

So, Judge, it leaves us between—sort of between a rock and a hard place. Mr. O'Neill desires to plead guilty, but, Judge, to put it, if I may speak freely, he is afraid of getting whacked, and basically by having an agreement that provides for—it basically would be a free-fall upward departure.

Responding to this comment, the judge remarked:

There is no free-fall upward departure. I don't even know what you are talking about. You have got a—he has pled to two counts, okay. And assuming I go along with the agreement that has been made to drop the other counts, you know what the maximum is. You know what the range is. I have told you that I am willing to give some consideration under 5K1.1 to his cooperation. So the term, upward departure, doesn't really apply here.

The question is the extent of the downward departure. That is what we are talking about . . . .

   . . . .

I will tell you what I said a minute ago and what I said in Mr. Cooper's case is in these cases I am not willing to agree upfront to a specific sentence or even a range of sentences. And you already know what the range is. So like I said, it is 259 on down.

The parties next appeared in court two weeks later with a modified plea agreement in hand. The rather complicated sentencing provision contained in paragraph 19 read:

19. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation, and, assuming the defendant's full and truthful cooperation, shall move the Court, pursuant to Sentencing Guideline 5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable sentencing guidelines range and the statutory minimum sentences provided for by 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c)(1)(A), and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range and the statutory minimum sentence rests solely with the Court. However, this Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of between 100% and 50% of the low end of the combined sentencing range for offenses set forth in Counts One and Nine. Each party reserves the right to argue at sentencing their position as to the amount of the downward departure within this range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court imposes a sentence within this agreed range of incarceration, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(c)

and (d). If, however, the Court refuses to impose a sentence within this agreed range of incarceration, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

With O'Neill's guilty plea (which, by the way, he has never asked to withdraw) in place, the judge responded to paragraph 19 by saying:

The way that the sentence will be calculated is this. I will figure out what the sentencing range is under the sentencing guidelines, including whatever mandatory minimums and consecutive things apply, which I have discussed with you on a previous occasion. That will give us a range. What this document says is that whatever the low end of the range is, that your sentence is going to be somewhere between the low end of that range and half of that.

After all was said and done, following a lengthy recitation of O'Neill's significant cooperation, the government recommended a sentence, using a 5K1.1 motion for a downward departure as the vehicle to get there, of 124 months. O'Neill's attorney seconded the motion. The judge, however, despite observing that O'Neill's cooperation "was significant in taking down Mr. Morales," opted for a stiff sentence, noting that O'Neill was a danger to the community who needed "to be incapacitated." Wrapping up, the judge said:

I am going to grant the motion for a departure, but it is not going to be a departure beyond the low end of the applicable range. I am departing off the high end of the range.

The sentence imposed was 224 months, 140 months on count one and a consecutive 84 months on count nine. O'Neill appeals his sentence, arguing, among other

things, that the judge impermissibly injected himself into the plea process in several respects.

The government concedes that this case must be returned to the district court for further proceedings per *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005), because the district judge, when fashioning the sentence, viewed the guideline range, 224 to 259 months, as mandatory. And that view, of course, was correct as O'Neill was sentenced prior to the decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005). But given the unusual circumstances of this case, we think a full remand, rather than a limited *Paladino* remand, is in order.

Judges, it is well-settled, may not participate in plea negotiations. Fed. R. Crim. P. 11(c)(1). This proscription against judicial intervention in plea negotiations is widely construed as categorical. *See United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998). However, it is also certainly well-established that judges are permitted to take an active role in "evaluating the agreement" in Rule 11(c) cases. *Id.* at 452. Where to draw the line between "intervention" and "evaluating" is where the rubber meets the road in this case.

We think what the judge did here comes close to crossing the line in a Rule 11(c) case. The rule, and the better practice, is simply to reject (without a lot of editorial comment) the plea, give the defendant an opportunity to withdraw it, and advise the defendant that if the plea continues, the judge is not bound by the party's plea agreement.

That said, given that the case must go back for further proceedings under *Paladino*, we think it unnecessary to definitively express a view as to whether the judge crossed the permissible line drawn by Rule 11, *Kraus* and other cases involving the role of the judge at sentencing. Because this case must go back anyway, we think it's best to

send it back completely and let the parties start the sentencing process again from the go position.

We take this step because we are troubled by several aspects of the sentencing proceeding as it dragged through three separate hearings over six weeks. At one point, the judge expressed the view that O'Neill was getting an undisclosed break in the plea agreement by not pleading to a drug-related offense which would probably make him a career offender under the guidelines. This was incorrect. At the time of his plea, O'Neill did not have requisite prior convictions for career offender status.

We are also concerned about certain statements that could have led O'Neill to believe that the recommended 124-month term still might be entered. This carrot-on-a-stick approach—"I'm not saying that I would not impose that [124 month] sentence. It is possible that I might impose that sentence and it is possible that I might be persuaded that that is the appropriate sentence"—very well could have lulled O'Neill into a false sense of comfort. Better the judge says nothing in a situation like this than give, from all appearances here, false hope.

Lastly, the government's 5K1.1 motion was really not granted despite what the judge said—"I have no quarrel with the 5K1.1 motion." The "mandatory" guideline range was, as we said, 224 to 259 months. The sentence imposed was 224 months. A sentence at the low end of a guideline range is not a departure.

For these reasons, we vacate O'Neill's sentence and remand the case to the district court for resentencing. Circuit Rule 36 shall apply on remand.

POSNER, *Circuit Judge.* We have a three-way split. Judge Evans wants to hold O'Neill to his guilty plea, but remand for resentencing before a different judge. Judge Sykes wants to grant O'Neill just the limited *Paladino* remand. My view is that the plea should be set aside. I join Judge Evans's proposed disposition, however, because his view is nearer to mine than Judge Sykes's is, because we need to decide the case, and because Judge Evans's proposed disposition does do a kind of rough justice; for O'Neill's primary desire is just to be resentenced by another judge rather than to reopen plea negotiations. Nevertheless, at the risk of seeming a fusspot, I cannot accept Judge Evans's analysis. I know that the life of the law has not been logic, but logic does have its claims, which in this case seem to me compelling. Either O'Neill was tricked into pleading guilty or he was not. If he was, the logical remedy is to set aside the plea; if he was not, then as Judge Sykes believes he is entitled to nothing more than a *Paladino* remand. I think the guilty plea should be set aside, and thus that O'Neill should not be subjected to the risk that the judge to whom the case is reassigned may think Judge Kennelly got it right and sentence O'Neill to the same 224 months.

I do not agree with Judge Sykes that O'Neill "just wants to be resentenced." That is what he'd most like, all right, but as I have said it is not relief to which he is legally entitled. He preserved his (alternative) claim for vacation of the plea, stating in his brief: "Because of the manner in which and the extent to which the district court participated in the plea negotiations in this case, Mr. O'Neill should be entitled to the opportunity to negotiate a plea free of any actual or apparent intervention by the court." We pressed his lawyer at argument: "So that means," one of us asked, "it was an involuntary plea, so he should be given a chance to reconsider, right?" And the lawyer said, "Right." The judge continued, "Isn't that the logic of your position? Vacate the plea, go back to the drawing board, and if there's

a new plea or if there's a trial, it will be before a different judge." The lawyer replied, "Yes, your honor."

O'Neill had been charged with nine counts of serious drug-related offenses but had negotiated a plea agreement whereby he would plead guilty to two of them and receive a sentence of 124 months, 100 months below the bottom of the guideline range applicable to his offenses, in recognition of the substantial assistance that he had given the government in rounding up his accomplices. Section 5K1.1 of the sentencing guidelines authorizes a below-guidelines sentence if the government moves for one on the basis of the defendant's having given the government substantial assistance.

The agreement provided that if the judge did not agree to the 124-month sentence, the agreement was void. (That is, it was an agreement made on the authority of Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.) The judge refused to go along, saying that he rejects as a matter of principle a plea agreement that specifies a particular sentence and hinting that he thought 124 months too lenient a sentence considering the scope of the defendant's criminal activity. The parties then submitted a new agreement which did not specify a sentence but did limit the sentencing range to between the bottom of the applicable range (224 to 259 months) and 50 percent of that bottom, that is, to between 112 and 224 months. The judge accepted the new agreement and sentenced the defendant to 224 months, the bottom of the guidelines range and therefore the top of the range authorized by the second plea agreement.

Obviously the judge thought 124 months, the sentence that the parties had agreed on, too lenient; but as an original matter one well might wonder what business it is of a judge to decide that the government has given too generous a punishment discount to the defendant (and

has therefore agreed to too lenient a sentence) in exchange for the defendant's assistance to the government. The decision whether to give such a discount and if so how great a one is quintessentially an exercise of prosecutorial judgment, balancing the deterrent and incapacitative benefits to the government of a longer sentence against the benefits to the government of obtaining the defendant's assistance and encouraging other criminals to assist the government. *United States v. Forney*, 9 F.3d 1492, 1503 n. 4 (11th Cir. 1993); *United States v. Wills*, 35 F.3d 1192, 1197-98 (7th Cir. 1994) (dissenting opinion); cf. *Melendez v. United States*, 518 U.S. 120, 125-27 (1996).

The exercise of prosecutorial discretion is a prerogative of the executive branch of government. *Wayte v. United States*, 470 U.S. 598, 607 (1985); *United States v. Giannattasio*, 979 F.2d 98, 100 (7th Cir. 1992). Judges in our system do not double as prosecutors, as we had occasion to emphasize in *In re United States*, 345 F.3d 450, 454 (7th Cir. 2003), noting that "paradoxically, the plenary prosecutorial power of the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches . . . . When a judge assumes the power to prosecute, the number shrinks to two." In that case we reversed the district judge's appointment of a special prosecutor to prosecute a crime that the Justice Department had decided not to prosecute. In *United States v. Zingsheim*, 384 F.3d 867, 872-73 (7th Cir. 2004), we similarly reversed a standing order by a district judge that imposed various restrictions on motions by prosecutors to reduce a defendant's sentence in recognition of his assistance to the government. A judge's decision not to permit the Justice Department to reward a cooperating defendant with a lighter sentence is an equally unjustified interference with the prosecutorial function.

And when a judge does this, the adversarial method, which is fundamental to Anglo-American jurisprudence, may be compromised, as it was in this case. Although the Department of Justice is dutifully defending the judge's action, it is doing so to maintain good relations with the district court, not because it thinks that what the judge did was right. The judge upended the Department's own agreement.

There is also a futility to such judicial interventions, since the prosecution can give a defendant a sentencing discount by dropping counts or otherwise altering the charges against him, and its decision is not judicially reviewable. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992). But presumably the 5K1.1 route has some advantages to the government or else it wouldn't use the device as frequently as it does.

The principle that judges in our system are not prosecutors might be thought implicit in the allocation of duties between the executive and the judiciary made by Articles II and III of the Constitution, but it exists in tension with the principle, also rooted in the Constitution, that Congress defines federal crimes and prescribes the punishments for them. Courts have therefore assumed, though perhaps with inadequate attention to the executive's prosecutorial prerogatives, that Congress can forbid all sentencing discounts for cooperation with the government and in the alternative can delegate its control over the discounts to the judiciary. E.g., *United States v. Spillman*, 924 F.2d 721, 724-25 (7th Cir. 1991).

Congress followed the alternative route in the Sentencing Reform Act, which provides in 18 U.S.C. § 3553(a) that

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in

determining the particular sentence to be imposed, shall consider—

**(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;

**(2)** the need for the sentence imposed—

> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> **(B)** to afford adequate deterrence to criminal conduct;
>
> **(C)** to protect the public from further crimes of the defendant; and
>
> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

**(3)** the kinds of sentences available;

\* \* \*

**(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

**(7)** the need to provide restitution to any victims of the offense.

The criteria set forth in (a)(1), (2), and (6) arm judges to do what the district judge did here—reject as being too lenient a sentence specified in a negotiated guilty plea. *United States v. Torres-Echavarria*, 129 F.3d 692, 696-97 (2d Cir. 1997); see also Fed. R. Crim. P. 11(c)(3)(A), which authorizes the district court to reject a Rule 11(c)(1)(C) plea agreement, and *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998).

At the hearing on whether to accept the initial agreement and thus sentence the defendant to 124 months, the district judge remarked: "I assume you [the prosecutor] are going to make a motion for downward departure. I don't have any—I am not going to have any issue with the concept of a downward departure based on substantial assistance. What this is about to me is the extent of it." He then heard argument by the prosecutor concerning the extent of the defendant's cooperation, and then announced:

> I will tell you that I am inclined not to agree to have the sentence bound by the specific sentence you have. I am not saying that I would not ultimately impose that sentence. It is possible that I might impose that sentence, and it is possible that I might be persuaded that that is the appropriate sentence. But I don't think I am willing to agree to a plea agreement that says that is the only sentence I can impose. It is really a question—as I said, at the outset, it is really a question of—I don't have any quarrel with the proposition that Mr. O'Neill should get credit and potentially very significant credit for what he has done in assisting the government, wearing the wire and being willing to testify against the people in this case, enabling you to charge new people in the case, enabling you in part to go after other people who aren't even in this case and so on, but I object to a provision which basically says this is the exact sentence you have to impose. So I am not going to go along with that provision.

After reminding the defendant that he was now free to withdraw his guilty plea, the judge added:

> As I said, I have no quarrel with the 5K1.1 motion, and that motion, I will tell you, unless I hear something between now and when you come back that I have not heard yet, that motion will be granted, and it is simply a question of deciding how much of a reduction that Mr.

O'Neill would get as a result of that. Should it be the approximately 100 months off…the low end, or should it be something lesser than that? Quite frankly, I don't think it would be greater than that, but should it be 100 months or should it be something less? In fact, I can't imagine circumstances in which it would be greater than that, I will just tell you that. But I am not ruling out the possibility that I would agree to that sentence after I, you know, gave you a chance to give me another pitch for that. But unless this is rewritten in a way that gives me leeway in making my own determination of how much of a decrease should be given, then I am not going to go along with it. So I am—I don't know if the word is rejecting or disagreeing. I am disagreeing or rejecting the term of the particular term of the plea agreement that provides that the sentence will be 124 months. I am not rejecting the part that provides for a departure under 5K1.1, but you are going to have to decide on your end what it is you want to do at this point.

At a subsequent hearing, the defendant's lawyer told the judge, "So, Judge, it leaves us between—sort of between a rock and a hard place. Mr. O'Neill desires to plead guilty, but, Judge, to put it, if I may speak freely, he is afraid of getting whacked, and basically by having an agreement that provides for—it basically would be a free-fall upward departure." The judge responded:

There is no free-fall upward departure. I don't even know what you are talking about. You have got a—he has pled to two counts, okay. And assuming I go along with the agreement that has been made to drop the other counts, you know what the maximum is. You know what the range is. I have told you that I am willing to give some consideration under 5K1.1 to his cooperation. So the term, upward departure, doesn't really apply here. The question is the extent

> of the downward departure. That is what we are talking about. . . . I will tell you what I said a minute ago and what I said in Mr. Cooper's case is in these cases I am not willing to agree upfront to a specific sentence or even a range of sentences. And you already know what the range is. So like I said, it is 259 on down.

A careful listener to what the judge said would have concluded the following: the judge as a matter of principle never accepts a stipulated sentence (a mistaken policy, by the way, as I'll point out, but that is beside the present issue); the judge accepted the government's representation that the defendant had rendered substantial assistance warranting a significant discount and thus the granting of a 5K1.1 motion; the judge might go along with the 100-month discount, but that was probably the most he would permit; probably the discount would be somewhat less.

The careful listener would have been deceived. The defendant got no discount at all. True, he was sentenced at the bottom of the guidelines range, but you can get such a sentence without filing a 5K1.1 motion. (The judge had never signaled that he might impose a sentence above the bottom of the range.) Such a motion is designed to get you *below* the guidelines range. *United States v. Joetzki*, 952 F.2d 1090, 1097 (9th Cir. 1991) ("'adjustments' and 'departures' are distinctly different concepts under the Guidelines. Adjustments are changes to an offense level within the Guidelines. Departures, on the other hand, are sentences imposed outside the Guidelines") (citation omitted); see also *United States v. Amedeo*, 370 F.3d 1305, 1312 n. 5 (11th Cir. 2004); *United States v. Harotunian*, 920 F.2d 1040, 1043 (1st Cir. 1990); cf. *United States v. McMutuary*, 217 F.3d 477, 486 (7th Cir. 2000). When at the final sentencing hearing the judge said that he was granting a downward departure, only "I am departing off the high end of the range," he was either kidding or misspeaking, for that is not a departure at all. A departure is a sentencing discount or bonus that results in a sentence that

is not within the guidelines range. In effect the judge denied the 5K1.1 motion, contrary to what he said he would do.

I am sure the judge was acting in good faith, but with the benefit of hindsight it is apparent that he was playing a cat and mouse game with the defendant. The defendant had a plea agreement with the government that specified a sentence that both he and the government wanted. He did not want to go to trial, possibly on more counts, and face a much higher sentence. The judge misled him by signaling that while the defendant would probably face a higher sentence if he pleaded guilty than 124 months, it would not be much higher.

Sentencing judges are placed in a quandary by being authorized on the one hand to reject a plea that specifies a sentence that the judge considers too lenient and on the other hand being forbidden by Fed. R. Crim. P. 11(c)(1) "to participate in these discussions," that is, the discussions between the prosecutor and the defense lawyer or defendant that resulted in the plea agreement. If the judge gives no explanation for why he is rejecting the agreement, the defendant is left in the dark, but if he explains the grounds of his rejection he may be thought to have initiated and participated in a discussion looking to the negotiation of a new plea agreement. Reconciling these directives is the judicial equivalent of squaring the circle, if one may judge from cases such as *United States v. Kraus*, *supra*, 137 F.3d at 453-54. It is another reason against the district judge's policy of refusing to accept the sentence negotiated by the parties.

But even if it would have been proper for the judge just to reject the stipulated sentence with no comment other than that he doesn't accept such stipulations, or with the comment that 100 months were much too much credit for the assistance the defendant had given the government, it was improper to create the impression that the sentence would

be close to what the agreement had specified and then impose a much harsher sentence. The judge pulled the rug out from under the defendant. We should not countenance such behavior. The defendant should be allowed to withdraw his plea.

SYKES, *Circuit Judge*, dissenting. Judge Kennelly did not impermissibly participate in plea negotiations in violation of Rule 11(c)(1). Rather, he explained his reasons for rejecting the parties' initial plea agreement, as *Kraus* explicitly requires. *United States v. Kraus*, 137 F.3d 447, 453 (7th Cir. 1998).

A defendant "has no absolute right to have his guilty plea accepted by the court." *Id.* (citing *Santobello v. New York*, 404 U.S. 257, 262 (1971)). Rule 11(c)(1) prohibits judicial participation in plea negotiations, but when a plea agreement is presented to the court for approval, "it is not only permitted but expected that the court will take an active role in evaluating the agreement." *Id.* at 452. Prosecuting criminal offenders is an executive function but sentencing is a shared power. *Mistretta v. United States*, 488 U.S. 361, 390 (1989); *United States v. Spillman*, 924 F.2d 721, 724 (7th Cir. 1991). The court may reject a plea agreement because it calls for a sentence that is too lenient or too harsh or because it unduly limits the court's sentencing discretion. *Kraus*, 137 F.3d at 453; *see also* FED. R. CRIM. P. 11(c)(3)(A).

The court's duty of independent evaluation extends with special force to "lock in" plea agreements under Rule 11(c)(1)(C). "[W]here the parties have agreed to a particular sentence pursuant to [Rule 11(c)(1)(C),] . . . the

court has the power—and under the Sentencing Guidelines, the explicit obligation—to consider whether that sentence is adequate and to reject the plea agreement if the court finds it not to be." *Kraus*, 137 F.3d at 453 (citing U.S.S.G. § 6B1.2(c); *United States v. Crowell*, 60 F.3d 199, 204 (5th Cir. 1999); *United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993)).

When a district court rejects a plea agreement, "it must be able to articulate a sound reason for doing so." *Id.* (quotation omitted). This is to prevent arbitrariness, discipline the exercise of discretion, and facilitate review. *Id.* This court held in *Kraus* that when a district court rejects a plea agreement, "the court may and, under our precedent, *must* explain why it finds the agreement objectionable." *Id.* (emphasis added). Although the court's explanation "no doubt will have an effect on any future negotiations," it will not be construed as impermissible participation in plea negotiations in violation of Rule 11(c)(1) "[s]o long as the court speaks in the context of 'actively evaluating a plea agreement' . . . and its remarks are confined to the agreement before it." *Id.* (citations omitted).

Here, Judge Kennelly was presented with a plea agreement that he found unacceptable. He announced two reasons for rejecting it: 1) although he had no objection in principle to a § 5K1.1 departure for O'Neill's substantial cooperation, the proposed "lock-in" fixing the sentence at 124 months would unacceptably cabin his discretion; and 2) the fixed sentence of 124 months might be too lenient. In my view, this explanation did not make the judge a participant in plea negotiations in violation of Rule 11(c)(1). Judge Kennelly was *required* under *Kraus* to explain why he was rejecting the agreement, and he did so. He confined himself to the terms of the agreement before him and spoke in the context of evaluating that agreement.

O'Neill's guilty plea was not tainted by impermissible judicial participation in plea negotiations.

What O'Neill is really complaining about is not the integrity of his plea but the length of his sentence. The plea agreement was renegotiated, the new agreement was accepted by the court, and O'Neill's sentence of 224 months is within the sentence range called for by that agreement, although at the very top of the stipulated range. O'Neill now argues that because his 224-month sentence was at the bottom of the otherwise applicable guidelines range, he did not get a § 5K1.1 departure after all. That the sentence did not actually "depart" from the otherwise applicable range makes no difference here because O'Neill agreed to it, albeit as an outer limit to the judge's discretion.

As Judge Posner notes, the usual remedy for impermissible judicial participation in plea negotiations is to set aside the plea, on the theory that judicial participation categorically undermines the plea's voluntariness. *See Kraus*, 137 F.3d at 458. O'Neill did not seek to withdraw his plea or otherwise object to Judge Kennelly's comments in the district court, so he is here on plain error review. Although he is claiming a Rule 11(c)(1) violation, he has not asked us to vacate his plea and conviction. He just wants to be resentenced. But there must be an error for us to grant relief, and there is no sentencing error here apart from the mandatory application of the sentencing guidelines contrary to the remedial opinion in *United States v. Booker*, 543 U.S. 220 (2005). The *Booker* error calls for a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). However, because O'Neill's sentence is within the range stipulated by the plea agreement and the district court did not impermissibly participate in plea negotiations, neither resentencing nor plea withdrawal is warranted. Accordingly, I respectfully dissent.

No. 04-2589 21

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*