# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

Nos. 06-4414 & 06-4415

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL G. LINDER,

*Defendant-Appellant.*

_____

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
Nos. 04 CR 50004 & 06 CR 50038—**Philip G. Reinhard**, *Judge.*

_____

ARGUED JANUARY 16, 2008—DECIDED JUNE 19, 2008

_____

Before MANION, WOOD, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* Michael G. Linder was in the business of providing services to union pension and health and welfare benefit plans. Linder entered into contracts to be the third-party administrator for the plans, and, in that capacity, exercised control over the plans' assets. Linder abused his position, and two federal criminal prosecutions followed. In December 2004, Linder pleaded guilty to two counts of giving a thing of value in order to influence an employee benefit plan in violation of 18 U.S.C. § 1954. Less than two years later, Linder pleaded guilty to two counts of mail fraud in

violation of 18 U.S.C. §§ 1341 and 1346 and five counts of
theft or embezzlement from an employee benefit plan in
violation of 18 U.S.C. § 664. At a consolidated sentencing
hearing for the two cases, the district judge sentenced
Linder to 60 months' imprisonment on the two § 1954
counts, 84 months' imprisonment on the two mail fraud
counts, and 60 months' imprisonment on each of the § 664
counts. The sentences of imprisonment on all the counts
were to be served concurrently. Linder has filed a notice
of appeal in both cases. We dismiss Linder's appeal
challenging his sentence in the 2006 case and affirm
Linder's appeal challenging his sentence in the 2004 case.

## I.

Linder, through his company Joseph/Anthony and
Associates, Inc. ("Joseph/Anthony"), acted as a third-party
administrator for many union employee pension and
health and welfare benefit plans. In late 1998 and
early 1999, Linder gave Harley Davidson motorcycles
to individuals closely connected with some of the plans
that Joseph/Anthony serviced. One $20,000 motorcycle
went to Fred Schreier, the President of Ironworkers
Local 146 and a trustee of two of its pension plans. Linder
gave another motorcycle to Thomas Kisting, the Business
Agent of Ironworkers Local 498 who was also the Plan
Administrator of two of that union local's pension plans.
In return for these motorcycle "gifts," Linder expected to
influence the investment decisions Schreier and Kisting
made regarding their union locals' pension funds.

While Linder was buying influence with these union
officials he was also defrauding their and many other
pension plans. Linder told the trustees of the pension

plans that their funds were being invested in self-directed mutual funds. Instead, he forged the signatures of the trustees and enrolled the plans into annuity contracts with Nationwide Life Insurance Company. In return for the business, Linder received millions of dollars in commissions and fees from Nationwide, paid through Joseph/Anthony and Liz/Mar and Associates, Inc. (another company controlled by Linder). Linder did not disclose to the trustees the compensation he received from Nationwide, which was not provided for in the service agreements between Joseph/Anthony and the pension plans.

In addition to defrauding the pension plans, Linder was also embezzling funds from three of those plans, as well as two of the union locals' health and welfare benefit plans. Linder inflated the bills for the premiums of the life insurance that Joseph/Anthony purchased for union members participating in the three pension plans, as well as the "stop-loss" insurance for the two health and welfare benefit plans. After Linder paid the premiums from the assets of the plans, he siphoned off for himself the rest of what he had billed the plans. All in all, between his embezzling and defrauding, Linder stole around $7,000,000 from the plans.

Linder's malfeasance finally caught up with him and, on January 27, 2004, a federal grand jury in Rockford, Illinois, returned an indictment in Cause No. 04 CR 50004 ("2004 case") charging Linder, based on his motorcycle "gifts," with two counts of giving a thing of value in order to influence an employee benefit plan in violation of 18 U.S.C. § 1954. Although a superseding indictment added a third count charging conversion of funds from an employee benefit plan in violation of 18 U.S.C. § 664, Linder

pleaded guilty to only the first two counts on December 10, 2004. On March 1, 2005, the government filed an agreed-upon motion, which was granted, to postpone Linder's sentencing because of "other allegations of criminal misconduct" by Linder that were under investigation by the government.

The government's investigation of the other allegations led to further charges. On June 30, 2006, the government filed an information in Cause No. 06 CR 50038 ("2006 case") charging Linder with two counts of mail fraud in violation of 18 U.S.C. § 1341 and five counts of converting funds from employee benefit plans in violation of 18 U.S.C. § 664. On the same day, Linder appeared before the district court to plead guilty to the information pursuant to a written plea agreement. The plea agreement listed the total amount of fraud, converted property, and relevant conduct for the 2006 case as approximately $6,930,155. The plea agreement also contained a calculation, "preliminary in nature," of Linder's sentencing range under the United States Sentencing Guidelines, which was estimated at 78-97 months' imprisonment. The plea agreement stated that "[t]he defendant understands that the . . . court ultimately determines the facts and law relevant to sentencing, and that the court's determinations govern the final sentencing guidelines calculation." It also stated that "the validity of this Agreement is not contingent upon the . . . court's concurrence with the above calculations."

In exchange for Linder's cooperation and other concessions, the plea agreement provided pursuant to Federal

Rule of Criminal Procedure 11(c)(1)(C)[1] that "the sentence imposed by the court shall include a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable Sentencing Guidelines range." If the court refused to apply the 50-percent reduction, the plea agreement expressly provided that "this Plea Agreement shall become null and void and neither party will be bound thereto." Inversely, if the district court accepted the 50-percent reduction, the agreement provided that the "defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d)."

Lastly, the plea agreement contained a waiver of Linder's appellate rights. The plea agreement stated,

> Defendant is also aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal or contest, under 18 U.S.C. § 3742 or 28 U.S.C. § 2255, or otherwise, his conviction and the resulting sentence, in exchange for the concessions made by the United States in this Plea Agreement, including its agreement to move for a [50-percent] downward departure.

---

[1] Rule 11(c)(1)(C) states that

the plea agreement may specify that an attorney for the government will . . .

(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or requests binds the court once the court accepts the plea agreement).

The district court discussed the provisions of the plea agreement, including the waiver of appeal, with Linder at the plea hearing and ultimately accepted Linder's plea of guilty and the plea agreement, subject to the court's review of the Rule 11(c)(1)(C) portion of the agreement. In a minute order, the district court also consolidated Linder's 2006 case with his 2004 case for sentencing.

After the change of plea hearing, but before sentencing, the district court issued a series of orders concerning the determination of Linder's Guidelines range for the 2006 case. On November 13, 2006, the district court directed the probation office to file a report examining whether any guideline enhancement was warranted under U.S.S.G. § 3B1.1(c), for having an aggravating or leadership role in a criminal scheme, or U.S.S.G. § 2B1.1(b)(2), for the number of victims involved in the crime, and also directed the parties to be prepared to discuss those enhancements at sentencing. The next day, the district court also ordered the parties to submit sentencing memoranda on the issues of whether each of the two cases constituted relevant conduct with respect to the other, and whether the facts of a related case, *United States v. Michael J. Brdecka*, No. 05 CR 50071 (N.D. Ill. July 18, 2005), constituted additional relevant conduct. At a telephone hearing the same day, the district court gave the parties an opportunity to submit memoranda to address the issues mentioned in its November 13 order. The district court also clarified that the leadership enhancement it was considering under U.S.S.G. § 3B1.1(c) was for Linder's role in the conduct at issue in the *Brdecka* case.

Michael Brdecka was prosecuted after Linder pleaded guilty in the 2004 case, but before the sentencing on Linder's consolidated cases. The government began to

investigate Brdecka after Linder, in a series of "proffer letters," admitted that he had received graft from Brdecka. (Linder said that Brdecka had paid him "kickbacks" in order to obtain and keep the securities trading business of many of the union locals' plans.) The investigation led to the government indicting Brdecka and charging him with providing a $9,700 kickback to Linder. Brdecka pleaded guilty, and, at his sentencing on November 17, 2006 (which was held before the same district judge who was presiding over Linder's two cases), admitted that he had given a total of $103,973 in kickbacks to Linder.

Both the government and Linder submitted memoranda on the issues identified by the district court. In its memoranda, the government took the positions that the $103,973 Brdecka gave to Linder was relevant conduct for purposes of Linder's sentence and that all the individual participants in the union locals' pension and health and welfare benefit plans were victims of Linder's offenses for purposes of U.S.S.G. § 2B1.1(b)(2). Linder, on the other hand, argued the opposite. Both parties did agree, however, that Linder should not receive an enhancement under U.S.S.G. § 3B1.1(c) for having an aggravating or leadership role in the Brdecka kickback scheme.

On December 19, 2006, the district court sentenced Linder. The district court grouped the two counts in the 2004 case together pursuant to U.S.S.G. § 3D1.2, and then did the same for the seven counts in the 2006 case. Next, the district court set the total offense level for the 2004 case at 14. Turning to the 2006 case, the district court started with a base offense level of 6 under U.S.S.G. § 2B1.1(a)(2). It then applied five enhancements. First, it determined that the $103,973 Brdecka gave to Linder was relevant conduct for purposes of the Sentencing

Guidelines and therefore should be added to the $6,930,155
loss figure contained in the plea agreement to yield a total
loss of over $7,000,000 and a 20-level increase in Linder's
offense level under U.S.S.G. § 2B1.1(b)(1)(K). Next, it
determined that a two-level enhancement under U.S.S.G.
§ 3B1.1(c) applied because of Linder's leadership role in
the kickback scheme with Brdecka. The district court then
applied a six-level enhancement under U.S.S.G.
§ 2B1.1(b)(2)(C) for an offense involving more than 250
victims because it found that each union member who
participated in the plans was a victim. Lastly, the district
court added a two-level enhancement for an abuse of a
position of trust under U.S.S.G. § 3B1.3 and a two-level
enhancement under § 2B1.1(b)(13)(A) for deriving more
than $1,000,000 as a result of the offense. The court then
subtracted three levels for acceptance of responsibility
to reach a total offense level of 35, which translated to a
Guidelines range of 168-210 months. After hearing from
both parties, the court accepted the Rule 11(c)(1)(C)
agreement and applied the 50-percent reduction. Linder
was sentenced to 84 months' imprisonment in the 2006
case and 60 months' imprisonment in the 2004 case,[2] to run
concurrently. He appeals.

---

[2] The district court did not explain how it got from a total
offense level of 14 (which in this case would have carried a
Guidelines range of 15-21 months) to a sentence of 60 months'
imprisonment in the 2004 case. We need not delve into that
issue, however, because Linder does not raise any specific
challenges to that sentence. Moreover, because (as we
explain below) we uphold Linder's 84-month sentence in the
2006 case, and that sentence is concurrent with his 60-month
sentence in the 2004 case, any challenge to the sentence in the
2004 case is moot.

**II.**

Although Linder has filed appeals from both the sentences he received, in his briefs filed with this court Linder asserts error only with respect to the sentence he received in the 2006 case. Specifically, Linder challenges the district court's determination of the loss for sentencing purposes, as well as its application of the two-level enhancement for Linder's leadership role in the Brdecka kickback scheme and the six-level enhancement for the number of victims. We need not address those challenges, however, if the waiver of Linder's right to appeal his sentence contained in the plea agreement is enforceable.

"We will enforce a plea agreement's appellate waiver if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007). Here, the waiver of appeal in the plea agreement could not be clearer: "defendant knowingly waives the right to appeal or contest, under 18 U.S.C. § 3742 or 28 U.S.C. § 2255, or otherwise, his conviction and the resulting sentence." Moreover, there is nothing in the record that indicates Linder involuntarily entered into the plea agreement. To the contrary, the transcript of the plea hearing reveals that the district court took pains to satisfy itself that Linder knowingly and voluntarily entered into the plea agreement. The district court, among other things, placed Linder under oath, determined that Linder was competent to proceed, and asked Linder pointed questions about the voluntariness of his decision to enter into the plea agreement. Regarding the waiver of appeal itself, the district court clearly explained it to Linder, and Linder acknowledged

under oath that he understood it and that he agreed to it.[3]

---

[3]  The relevant portion of that discussion is as follows:

DISTRICT COURT: And in this Agreement, I believe that there's a waiver of the appeal rights and there's 2255 rights [that are being waived as well]?

LINDER'S ATTORNEY: That is correct.

THE COURT: All right. In the Agreement, you are giving up your right to appeal those limited issues that could go to a higher court, and you're giving up your right to file before me within one year of the time that I sentence you, a habeas corpus motion which would essentially allege some sort of a constitutional issue that would warrant a vacation of your conviction.

Now, you're giving up all rights to, after I sentence you, to appear before anybody or to have your case looked at by anybody else. That's a valuable appeal right. I could make an error somehow in my calculations of the Guidelines. Do you understand all that?

MR. LINDER: Yes, Your Honor.

THE COURT: And you've talked that over with your lawyer?

MR. LINDER: Yes.

THE COURT: And that's what you want to do?

MR. LINDER: Yes.

THE COURT: What is he getting in return for that, Mr. McKenzie [the attorney for the government]?

MR. MCKENZIE: Your honor, principally the United States is making a 5K motion for a downward departure.

THE COURT: All right. Which is the 50 percent reduction. And that's what you wish to do; is that correct?

MR. LINDER: Yes.

Nevertheless, Linder presents two arguments in an attempt to avoid the enforcement of that provision. First, Linder argues that the district court violated Federal Rule of Criminal Procedure 11(c)(1) and impermissibly became involved in the plea negotiations between the government and Linder when it requested that the government provide additional information on the Brdecka kickback scheme and the number of victims of Linder's criminal conduct. While the district court should take an active role in evaluating a plea agreement, Rule 11(c)(1) categorically prohibits the court from participating in plea negotiations between the government and the defendant's attorney. Fed. R. Crim. P. 11(c)(1) ("The court must not participate in [plea] discussions."); *see also United States v. Kraus*, 137 F.3d 447, 452 (7th Cir. 1998) ("The proscription against judicial intervention [in plea negotiations] has been widely construed as categorical, admit[ting] of no exceptions." (internal quotation marks and citations omitted) (second alteration in original)). The plea agreement in this case contained a preliminary calculation of Linder's Guidelines range. According to Linder, the district court impermissibly inserted itself into the plea negotiations when it asked for supplemental briefing on issues relating to the Brdecka kickback scheme, as well as to the number of victims, and then, based on those additional facts, determined a Guidelines range more than twice as high as the one contained in the plea agreement.

Since Linder did not move to withdraw his guilty plea in the district court, we review Linder's allegations that

the district court violated Rule 11 for plain error.[4] *United States v. Vonn*, 535 U.S. 55, 59 (2002). If the district court had violated Rule 11, then Linder might be in a position to have his plea vacated, which would mean that the waiver of appeal in the plea agreement would not matter. *See Kraus*, 137 F.3d at 458; *see also United States v. Miles*, 10 F.3d 1135, 1142 (5th Cir. 1993) ("[A] defendant who has pled guilty after the judge has participated in plea discussions should be allowed to replead."). But there was no violation of Rule 11 here. The district court did not impermissibly insert itself into the plea negotiations because it accepted the plea agreement that was placed before it. In other words, Linder got all that he bargained for in the plea agreement: the 50-percent reduction from the low end of the Guidelines range as calculated by the district court. The plea agreement stated that:

> this Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the court shall include a term of imprisonment in the custody of the Bureau of Prisons of 50 percent of the low end of the applicable Sentencing Guidelines range.

Federal Rule of Criminal Procedure 11(c)(1)(C) allows parties to agree to a specific sentence. *See, e.g., United States v. Weathington*, 507 F.3d 1068, 1070 (7th Cir. 2007). If the court decides to accept the plea agreement, Rule

---

[4] In his briefs to this Court, Linder requested only that his sentence be vacated. At oral argument, however, Linder's counsel represented that Linder was seeking to have the plea agreement vacated. We need not determine whether Linder waived his right to seek such relief because his Rule 11 arguments fail on the merits.

11(c)(1)(C) provides that the court is bound to the sentence agreed to by the parties pursuant to that rule. *United States v. Paulus*, 419 F.3d 693, 696 (7th Cir. 2005) (noting that an agreement pursuant to Rule 11(c)(1)(C) "bind[s] the court to the recommended sentence once it accepts the plea agreement"). Here, the agreed-to sentence under Rule 11(c)(1)(C) was 50 percent of the low end of the applicable Guidelines range. Although the district judge deferred the decision on this portion of the agreement at the plea hearing (as he was entitled to do under Rule 11(c)(3)(A)), he ultimately accepted the agreement at sentencing and gave Linder the 50-percent reduction. Thus, Linder got the benefit of his bargain.[5]

Linder's Rule 11 argument presumes that the plea agreement's preliminary calculation of his sentencing range was binding on the district court, so that, when the district court determined a range much higher than the one contained in the plea agreement, it violated the

---

[5] *United States v. O'Neill*, 437 F.3d 654 (7th Cir. 2006), upon which Linder principally relies, does not help Linder. In *O'Neill*, the district court *rejected* the original plea agreement because it disagreed with the sentence negotiated pursuant to Rule 11(e)(1)(C), the predecessor to Rule 11(c)(1)(C), of 124 months. *O'Neill*, 437 F.3d at 655-56. Thus, questions about the district court's involvement in the plea negotiations arose when, based on the district court's comments after rejecting the initial plea agreement, the parties came back with another Rule 11(c)(1)(C) agreement that allowed for a substantially higher sentence. *Id*. at 656-57. In contrast, the district court in this case accepted the plea agreement presented to it by the parties, and there is no evidence on the record that the district court participated in any way in the fashioning of that agreement.

plea agreement. But that is not supported by what the agreement says. Nowhere in the agreement does it say that the district court has to accept the Guidelines range contained in the plea. Rather, the agreement makes clear that the Guidelines calculations are "preliminary in nature," that the "court ultimately determines the facts and law relevant to sentencing," that the "court's determinations govern the final sentencing guidelines calculation," that the "validity of this Agreement is not contingent upon . . . the court's concurrence" with the calculations in the agreement, and that, other than the 50-percent reduction, "the parties have agreed that the court remains free to impose the sentence it deems appropriate."

Linder cannot now claim ignorance of those provisions, either, because the district court made it abundantly clear to him at the plea hearing that the court's guidelines calculations, and not those found in the plea agreement, would govern his sentence. At four separate points before Linder pleaded guilty, the district judge explained to Linder that, under the plea agreement, the Guidelines calculations were the province of the court and not covered by the Rule 11(c)(1)(C) agreement. After each time, Linder stated under oath that he understood:

> ATTORNEY FOR THE GOVERNMENT: The agreement is that the court impose its incarceration aspect at 50 percent off of the low end, which would result in a 39-month sentence.

> THE COURT: All right. That's if I calculate the Guidelines the same way you people have calculated.

> ATTORNEY FOR THE GOVERNMENT: That's correct, Judge.

> THE COURT: You understand that I could calculate them differently, and it could work to your benefit as it could work to your detriment. Mr. Loeb, you understand that?
>
> LINDER'S ATTORNEY: Yes, Judge.
>
> THE COURT: And you understand that?
>
> MR. LINDER: Yes, Your Honor.

The district judge stressed it a second time, and Linder again stated that he understood:

> THE COURT: This Plea Agreement is governed by Rule[ ] 11(c)(1)(C), and I have not read that provision when I had been looking over the Plea Agreement, but that provision is one that provides that you and the Government agree upon a certain sentence in the case, and you heard what the Government said, it's—after the Guidelines are calculated, and the Guidelines would be calculated by me, even though your lawyer and the Government lawyer have calculated them, I still have to determine those. And that based upon my calculation, you would be sentenced to 50 percent of the low end of the Guideline range. Is that your understanding?
>
> MR. LINDER: Yes, your Honor.

And again:

> THE COURT: But I want you to understand, again, that I have to determine the Guidelines which is the premise for getting at the 50 percent reduction. Do you understand that?
>
> MR. LINDER: Yes, Your Honor.

> THE COURT: Do you have any questions about the Plea Agreement at this point?
>
> MR. LINDER: No, Your Honor.

And again:

> THE COURT: I've already informed you, and I'm just going to briefly tell you again that under our sentencing procedures in Federal Court, we're governed by Guidelines, and I calculate what those are. . . . [I]n this case, you have a Plea Agreement which, as I've told you, is contingent upon my calculations of the Guidelines.
>
> Do you understand how I would arrive at a sentence?
>
> MR. LINDER: Yes, Your Honor.

Linder's representations at the plea hearing are presumed true, and we have been given no reason to doubt them. *Weathington*, 507 F.3d at 1072. In any event, Linder's claim that the objectively careful listener would have been tricked into thinking that he was going to receive a sentence based on the Guidelines range contained in the plea rings more than a little hollow. Of course, Linder *could* have negotiated under Rule 11(c)(1)(C) for a specific Guidelines calculation or a specific term of imprisonment, rather than for a sentence that was half of the low end of the Guidelines range as determined by the court. But Linder did not. Having accepted the plea agreement, the district court was acting consistent with the agreement's terms when it determined that a much higher Guidelines range than the one contained in the plea agreement applied. Thus, Linder's Rule 11 argument has no merit and does not help him avoid the waiver of appeal contained in the plea agreement.

Linder's second argument for sidestepping the waiver of appeal is a variant of the first and can quickly be dismissed. Linder asserts in his reply brief that the government breached the plea agreement by advocating for the six-level enhancement under U.S.S.G. § 2B1.1(b)(2)(C) for 250 or more victims, along with an 86-month sentence.[6] That argument presupposes that the government had agreed to argue in favor of the Guidelines range contained in the plea agreement. While Federal Rules of Criminal Procedure 11(c)(1)(B)[7] and (C) certainly allow for that type of an agreement, the parties' agreement did not include such a provision. Accordingly, the government did not breach the plea agreement.

Linder may understandably be disappointed by the sentence the district court chose to mete out, a sentence

---

[6] Linder also argues that the government breached the plea agreement by using Linder's proffer statements about Brdecka to enhance his sentence, since the district court added the $103,973 that Brdecka gave Linder in kickbacks to the amount of loss. But that is not correct. Linder's proffer statements were not necessary because Brdecka admitted under oath at his guilty plea that he had given Linder the $103,973 in kickbacks.

[7] That rule states:

[T]he plea agreement may specify that an attorney for the government will . . .

(B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court) . . . .

that was considerably higher than the tentative sentence set forth in the plea agreement. But disappointment is not enough to let Linder renege on a plea agreement that was clearly explained to him at the time he entered into it and that has been carried out consistent with its terms. Because we find that Linder has waived his right to appeal the sentence he received in the 2006 case, we need not address Linder's other challenges to that sentence.

### III.

Although Linder filed a notice of appeal in the 2004 case, Linder does not challenge the 60-month sentence he received. Accordingly, we AFFIRM in No. 06-4414. While Linder does challenge the 84-month sentence he received in the 2006 case, he knowingly and voluntarily waived his right to appeal that sentence. Because neither the district court nor the government violated the terms of the plea agreement, Linder's waiver stands. Accordingly, we enforce the agreed-to waiver of appeal and DISMISS in No. 06-4415.