In the

# United States Court of Appeals
## For the Seventh Circuit

————————

Nos. 04-1671 & 04-1695

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

PHILIP J. ZINGSHEIM,

*Defendant-Appellant.*

————————

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CR-192—**J.P. Stadtmueller**, *Judge.*

————————

No. 04-2029

In the Matter of:

UNITED STATES OF AMERICA,

*Petitioner.*

————————

Petition for a Writ of Mandamus to the United States
District Court for the Eastern District of Wisconsin.
No. 03-CR-258—**J.P. Stadtmueller**, *Judge.*

————————

ARGUED SEPTEMBER 14, 2004—DECIDED SEPTEMBER 29, 2004

————————

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. After Darvin Moore entered a plea of guilty in a federal criminal prosecution, the district judge startled both sides by announcing that from that day on the prosecutor must reveal extra details as part of any request under U.S.S.G. §5K1.1 that the defendant receive a lower sentence to reward substantial assistance in the apprehension or prosecution of other offenders. The directive, which no one had requested and the district judge labeled a "standing order," reads:

> Court notes the new procedure to be followed when the government wishes to file any downward departure motion for substantial assistance: 1) the court will no longer take up U.S.S.G. 5K1.1 downward departure motions as part of the initial sentencing hearing; instead, all 5K1.1 motions need be filed formally, in writing, and will be considered in an entirely separate proceeding; 2) all motions for downward departure will be heard within 60-days from the day of filing; and 3) all motions for downward departure must be accompanied by the following (which may be filed under seal as appropriate and consistent with Local Rule 79.4): a) copies of all statements given by the defendant to any component of law enforcement, b) copies of transcripts of testimony given by the defendant whether before a grand jury, trial or other relevant proceeding in state or federal court, c) a copy of a recommendation approved and signed by an individual holding a supervisory position in the law enforcement agency with whom the defendant cooperated (multiple agencies require multiple submissions), d) a written recommendation of a supervisor in the office of the prosecutor (e.g. United States Attorney, local district attorney or state attorney general), and e) a written report

> from the downward departure committee which shall include the names and signatures of the committee members who considered the matter, the date(s) the matter was considered, and the recommendation(s) of the committee together with any dissenting view(s). Failure to adhere to this policy will result in the motion being summarily denied without prejudice.

The United States has informed the judge that it will not provide the information about its deliberative process required by subparts (3)(c), (d), and (e); the district judge in turn has failed to act on any motion to reduce a sentence under §5K1.1. Although the record does not suggest that Moore would have been the beneficiary of such a motion in the absence of the order, the United States has filed a petition for mandamus, asking us to expunge the standing order. In a second prosecution, however, the effect is demonstrable: the United States filed a motion asking the judge to sentence Philip Zingsheim below the guideline range. The district court ignored that motion and gave Zingsheim the highest sentence within the guideline range. Zingsheim and the United States have appealed.

Both appeals are authorized by statute—Zingsheim's by 18 U.S.C. § 3742(a)(1) and (2), the prosecutor's by § 3742(b)(1) and (2). One might question whether the United States is injured by a sentence that is in its view unduly high, but a district judge's refusal to apply §5K1.1 deprives the Executive Branch of an inducement that can be used to solve old crimes and deter new ones. Although a similar incentive could be offered through the commutation process, the cost and delay of submitting criminal prosecutions to the President for retail evaluation of proposed sentence reductions is one that the Department of Justice understandably wants to avoid. So both the defendant and the United States are aggrieved. Moreover, because the source of the complaint is the district judge's refusal to exercise discre-

tion, rather than a conclusion that the accused failed to provide the prosecutor with assistance, these appeals are not affected by the principle that discretionary decisions not to depart from the Guidelines are unreviewable. Compare *United States v. Franz*, 886 F.2d 973 (7th Cir. 1989), with *United States v. Poff*, 926 F.2d 588, 590-91 (7th Cir. 1991) (en banc). See *United States v. Campo*, 140 F.3d 415, 418-19 (2d Cir. 1998).

Because appeal provides an adequate legal remedy for both the defendant and the United States, it is inappropriate to issue an extraordinary writ such as mandamus. See *Kerr v. District Court*, 426 U.S. 394, 403 (1976); *Ex parte Fahey*, 332 U.S. 258, 260 (1947). Mandamus is doubly inappropriate because the United States does not want us to direct the district judge to carry out any judicial duty in Moore's prosecution; instead it wants us to blot the standing order from the books. A Writ of Erasure is not among those remedies that are "agreeable to the usages and principles of law" and authorized by 28 U.S.C. §1651(a), the All-Writs Act. Mandamus may issue in connection with judicial acts even if the writ depends on a view that a district court's standing order is invalid, see *Miner v. Atlas*, 363 U.S. 641 (1960), but the United States does not protest any step the district court has taken with respect to Moore; its petition deals with the order in the abstract, and not with its consequences.

Standing orders have much the status of local rules, and the body entitled to decide whether a given rule of procedure (no matter its label) is inappropriate under the Rules Enabling Act, 28 U.S.C. §2071–77, and Fed. R. Crim. P. 57, is the Judicial Council of the circuit. This standing order is problematic, not only for the procedural reasons given by *In re Dorner*, 343 F.3d 910 (7th Cir. 2003), but also because it treats a decision by the United States to protect the confidentiality of internal deliberations as a reason to increase the defendant's punishment. The Judicial Council, which is

the judiciary's administrative body, see 28 U.S.C. §332(d)(1), and holds the authority to review local rules for conformity with national law, 28 U.S.C. §§ 332(d)(4), 2071(c), could evaluate these concerns on application by the Executive Branch. In litigation, however, the focus must be on *application* of the standing order, and not its existence as an abstract matter. The order has not affected Moore, so there is no basis for relief in his prosecution. But the order has been applied to Zingsheim's detriment, and we may address the legal status of the order in the course of assessing its application to him, so we turn to the appeals.

Zingsheim's sentence is unlawful for a simple reason: the district court failed to exercise the discretion created by U.S.S.G. §5K1.1. See also 18 U.S.C. §3553(e), 28 U.S.C. §944(n). District judges must resolve motions that may affect sentences; they cannot be ignored, as the prosecutor's was. Deferral is not an option. Once sentence has been imposed, the district court loses authority to modify the terms other than to the extent that Fed. R. Crim. P. 35 permits. See *Romandine v. United States*, 206 F.3d 731 (7th Cir. 2000); *United States v. Mittelstadt*, 960 F.2d 335, 337 (7th Cir. 1992). And Rule 35 allows adjustment in three circumstances only: the judge may fix errors within seven days; the judge may correct a sentence on remand following an appeal; and the judge may reduce a sentence on a prosecutor's motion to reward substantial assistance that occurs after the date of sentencing. None of these permits a judge to reserve decision on a §5K1.1 motion made before sentencing and designed to reward assistance that the accused already has provided. See *United States v. Mitchell*, 964 F.2d 454, 461-62 (5th Cir. 1992); *United States v. Howard*, 902 F.2d 894, 896-91 (11th Cir. 1990).

By ignoring rather than denying the prosecutor's motion, the district judge withheld from the parties and this court the reasons for his decision. The standing order says that motions will be denied, not that they will be swept under the

rug. The difference raises the question whether something else underlies the inaction, though the lack of explanation precludes a confident answer. Was there perhaps some other defect in the motion? Did it fail to show that Zingsheim actually furnished substantial assistance meeting the criteria in §5K1.1? Did the judge think that he needed "all" statements Zingsheim ever had given to "any" law-enforcement agency, as subsection (3)(a) demands? (A subset of all possible information normally should suffice for reliable decision, and it is hard to see why the district judge should receive information on which the prosecutor does not rely as the "substantial assistance" to be rewarded.) Did the motion fail because not supported by a supervisor in each law-enforcement agency, as subsection (3)(c) requires? Or is the problem, from the district court's perspective, the prosecutor's failure to hand over deliberative and pre-decisional materials? We cannot tell what information the district judge thought he needed to apply §5K1.1 correctly, or why the judge wanted it, so we cannot say conclusively whether the district judge was entitled to demand that information from the Executive Branch. For that matter, we cannot be sure why the judge thought the standing order itself appropriate. He did not attempt to justify any of its details, though he did state generally that more information could reduce the risk of error, and that a full record is especially appropriate in times when the political branches of government have questioned the frequency of departures from the Sentencing Guidelines.

Zingsheim must be resentenced. When deciding whether a sentencing discount is appropriate, the judge must not hold against Zingsheim the prosecutor's decision not to provide information that meets the description of the standing order's subparts (3)(c), (d), and (e). Judges may not demand that litigants surrender evidentiary privileges as a condition of adjudication: what a "privilege" means is an entitlement to withhold information even if it would bear on the merits

of a disputed issue. Multiple privileges apply to most if not all of the matters described in subparts (3)(c), (d), and (e). The attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government. See, e.g., *Swidler & Berlin v. United States*, 524 U.S. 399 (1998); *In re Grand Jury Witness*, 288 F.3d 289 (7th Cir. 2002) (when legal advice is given to or for the benefit of a governmental body, it rather than an individual officeholder enjoys the benefit of this privilege). The work-product privilege applies to many other discussions between prosecutors and investigating agents, both state and federal. See, e.g., *FTC v. Grolier Inc.*, 462 U.S. 19 (1983). The deliberative-process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. See, e.g., *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975). And the executive privilege shields recommendations to high-ranking officials. See *Cheney v. District Court*, 124 S. Ct. 2576 (2004); *United States v. Nixon*, 418 U.S. 683 (1974).

These privileges have exceptions, as *Nixon* demonstrates and *Cheney* reiterates, but whether an exception applies must be addressed and resolved one lawsuit—indeed, one document—at a time. Nothing in the record of this case hints at a reason for overriding any of the four privileges, such as a belief that a particular substantial-assistance motion had been procured by bribery. The district judge had no more basis for demanding that the Executive Branch open its internal deliberations than Congress would have for demanding that every Presidential veto message include all background papers circulated inside the government, a description of any debate within the Cabinet, and a disclosure of all dissenting voices (together with the reasons those officials gave for their views). More information might in principle inform the judge's decision, as it could inform a decision whether to override a veto, but one branch of government cannot compel another to reveal intra-branch

deliberations just to slake its curiosity: the improvement of the demanding branch's decision-making comes at the expense of complicating and perhaps undermining the accuracy of the other's decision-making.

Law-enforcement agencies may be less likely to cooperate with U.S. Attorneys if they know that *everything* they say will be spread on the public record (or can be so exposed at the discretion of a judge). For that matter, witnesses and defendants also may be less willing to cooperate, for more disclosure increases the risk of retaliation by their former confederates in crime. This is a potential problem with subparts (3)(a) and (b), as well as subparts (3)(c), (d), and (e). (And subpart (3)(b), to the extent that it requires disclosure of state as well as federal grand-jury material, has potential problems under other legal rules that grant confidentiality to these proceedings.)

A district judge may require the prosecutor to show how the defendant provided "substantial assistance in the investigation or prosecution of another person who has committed an offense" (to quote from §5K1.1). Otherwise the judge could not decide whether to depart and, if so, by how much. But except with extraordinary justification a judge may not inquire why or how the United States Attorney decided to file a §5K1.1 motion and may not insist that "all" statements of any provenance be revealed, even if not material to the §5K1.1 decision. And we cannot imagine, nor did the district judge suggest, a reason to insist that any person other than the U.S. Attorney take responsibility. The Executive Branch is entitled to decide which tasks will be carried out by supervisors and which by line employees; the judge's demand in subsection (3)(c) that substantial-assistance motions receive the approval of each law-enforcement agency, that supervisors indicate that assent, and that a committee of some kind rather than the U.S. Attorney make the ultimate decision, is an effort to regulate the internal organization of another branch of government.

Section 5K1.1 gives the power to make substantial-assistance motions to "the government" as an entity, which is to say, to the Executive Branch, represented in most criminal litigation by the United States Attorney. A district judge may not limit the U.S. Attorney's authority to decisions that garner the support of each law-enforcement agency, or the majority of some committee. Just as judges may not routinely review decisions to withhold §5K1.1 motions, see *Wade v. United States*, 504 U.S. 181 (1992), so they may not give a blocking power to subordinate state or federal officials. Cf. *Melendez v. United States*, 518 U.S. 120 (1996).

Zingsheim's sentence is vacated, and the case is remanded with instructions to resentence him as appropriate under §5K1.1 and this opinion. The petition for a writ of mandamus is denied.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*