# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 07-2612

IN THE MATTER OF:

UNITED STATES OF AMERICA,

*Petitioner*.

Petition for a Writ of Mandamus to the United States
District Court for the Southern District of Illinois.
No. 06-CR-40024-JPG—**J. Phil Gilbert**, *Judge*.

SUBMITTED SEPTEMBER 5, 2007—DECIDED OCTOBER 1, 2007

Before EASTERBROOK, *Chief Judge*, and POSNER and
RIPPLE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Katie Heath was charged by
indictment with making and distributing methamphet-
amine, in violation of 21 U.S.C. §841(a)(1). Because she
is a repeat offender, the statutory minimum sentence of
20 years lies above the Guideline range of 135 to 168
months. See 21 U.S.C. §841(b)(1)(A)(viii), §851. Heath
agreed to plead guilty; in return, the prosecutor promised
that, if she provided enough information helpful in the
prosecution of other persons, a motion would be filed under
U.S.S.G. §5K1.1 so that the judge could give a sentence
below 240 months. See also 18 U.S.C. §3553(a)(3), 28
U.S.C. §994(n). The agreement adds that whether Heath
has provided enough useful assistance is an issue commit-
ted to the prosecutor's decision.

A presentence report was completed before the hearing at which Heath attempted to plead guilty. (This is how we know that the Guidelines suggest a sentence between 135 and 168 months.) Yet instead of accepting or rejecting Heath's plea, the district court decided to postpone decision until after Heath had provided whatever information and assistance she could render and the prosecutor had revealed whether a motion under §5K1.1 would be filed. The United States moved for reconsideration, observing that the process of cooperation, including Heath's testimony in other cases, might last a year or more. Until it has been accepted, a plea may be withdrawn for any or no reason. See Fed. R. Crim. P. 11(d)(1). The prosecutor expressed concern that Heath would wait until the time provided by the Speedy Trial Act, 18 U.S.C. §3161, had run, withdraw her offer to plead guilty, and move for dismissal of the charge—for a district court's desire to wait until cooperation has been completed is not among the reasons that the Act allows for deferring trial.

This motion led the district judge to insist that the United States provide all information that the judge thought necessary to make an immediate decision about Heath's eligibility for favorable treatment under §5K1.1. The judge propounded this set of interrogatories to the United States Attorney:

1. What are the names of the case agents that are interviewing the defendant with respect to her cooperation on other investigations?

2. What is the status of the other investigations referred to by the government including:

   a. The names of the individual or individuals that are the targets of these investigations?

   b. Whether these will be federal or state prosecutions, and if state prosecutions,

   in what county will the indictment or information be filed?

 c. Has the defendant provided law enforcement with oral or written statements regarding her information on the targets of these investigation[s]?

 d. Have the defendant's statements been thoroughly truthful, complete, and reliable?

 e. When does the government expect criminal charges to be filed against the targets of these investigations for which the defendant is providing substantial assistance?

 f. Does the government anticipate that this defendant will be called to testify in any current or future cases on behalf of the government, and if so, which ones?

3. To date, has the defendant breached her plea agreement with the government?

4. Does the government or its agents plan on interviewing the defendant again with respect to her cooperation and if so, when?

5. Assuming continued cooperation by this defendant, in light of the answers above, when does the government believe it will be in a position to make the determination whether or not [to] file a substantial assistance motion?

6. Does the government have any reason to believe that this defendant will not continue to cooperate with the government even if it files a substantial assistance motion before sentencing? If so, why?

7.  Where § 5K1.1 motions for downward depar-
    ture are designed to consider a defendant's
    presentence cooperation and Rule 35(b) mo-
    tions for downward departure are designed to
    consider a defendant's post-sentence coopera-
    tion, what is the government's rational basis
    for failing to file a § 5K1.1 motion for down-
    ward departure based on the defendant's
    presentence cooperation at this time?

The district judge's demand for this information, before
he would act on the motion for reconsideration, led the
United States to file a petition for a writ of mandamus.

Although the district judge has expressed concern that,
without knowing the answers to the interrogatories, Heath
cannot make an informed decision to plead guilty, Heath
herself has not expressed any such reservation. She
appears to believe that she has struck the best bargain
available, even if—as the judge fears—the prosecutor
will not value her assistance highly enough to reward it
with a motion under §5K1.1.

If the prosecutor should act unreasonably in failing to
make a §5K1.1 motion after Heath's cooperation has been
completed, that would provide "a fair and just reason" for
her to withdraw the plea. See Fed. R. Crim. P. 11(d)(2)(B).
If the prosecutor should act *so* unreasonably that the
decision not to make a motion lacks even a rational
basis, the court might be entitled to proceed as if such a
motion had been made. See *Wade v. United States*, 504
U.S. 181 (1992). The existence of these options after the
prosecutor had made a decision makes it unnecessary to
postpone action on a guilty plea. It is inappropriate for a
court to presume that the prosecutor will act unreason-
ably. What is more, a judicial effort to supervise the
process of reaching a decision intrudes impermissibly
into the activities of the Executive Branch of government.

Judges in the United States resolve the parties' disputes rather than initiate their own factual inquiries on issues that the parties have not contested; that's a major difference between adversarial and inquisitorial systems. Although judges sometimes may reject plea agreements with which the parties are satisfied, ordinarily they do so to protect the Judicial Branch's interests. For example, although Fed. R. Crim. P. 11(c)(1)(C) allows the prosecutor and the defendant to agree on a sentence, Rule 11(c)(5) allows the judge to reject the bargain if the agreed sentence would be one the judge deems inappropriate. Similarly, a judge may reject a proposed consent decree in civil litigation if implementing the decree would create a drain on judicial resources or place the judiciary in an inappropriate position vis-à-vis other governmental bodies. Sometimes it makes sense to postpone accepting a guilty plea when the existing record does not permit the judge to make an intelligent decision under Rule 11(c)(5), or when the potential sentence is so uncertain that a motion to withdraw the plea under Rule 11(d)(2)(B) is a significant prospect until the presentence report has been prepared. See, e.g., *United States v. Shaker*, 279 F.3d 494, 497 (7th Cir. 2002). But in none of these situations does (or may) a court use discretion to reject a plea, or postpone decision, as a means to supervise the internal operations of another branch of the national government.

The judge's interrogatories seek the names of case agents and witnesses, ask the prosecutor to disclose the status of ongoing investigations, and direct the prosecutor to reveal tentative conclusions such as whether Heath has so far provided "enough" assistance and how the prosecutor thinks that Heath would react to a lower sentence imposed before her cooperation has been completed. These are questions a United States Attorney might well ask of an Assistant United States Attorney; they are not appropriate questions for the Judicial Branch to ask of the Executive

Branch. Multiple privileges cover the internal delibera-
tions of the Executive Branch, just as they do for the
Judicial Branch's internal deliberations. As we explained
in *In re United States*, 398 F.3d 615, 618 (7th Cir. 2005),
"[h]ow the United States reaches its litigating positions,
who said what to whom within the prosecutor's office, and
so on, are for the Attorney General and the President to
evaluate. The Judicial Branch is limited to assessing
counsel's public deeds." See also, e.g., *Cheney v. United
States District Court*, 542 U.S. 367 (2004); *United States v.
Zingsheim*, 384 F.3d 867 (7th Cir. 2004).

The Supreme Court held in *Wade* that a prosecutor's
decision not to file a motion under §5K1.1 should be
treated just like the selection of a charge or a decision not
to engage in plea negotiations. Whether to reward a
given defendant's cooperation depends on how much
assistance the prosecution needs; defendants may compete
to supply assistance, and a reduced sentence is a price
that the prosecutor pays. How steep the price may be
depends on conditions of supply and demand, which
prosecutors and law-enforcement agencies observe but
judges do not. See also *Melendez v. United States*, 518 U.S.
120 (1996) (a prosecutor is entitled to make separate
decisions about whether a defendant's substantial assis-
tance justifies a sentence below the Guidelines and below
a statutory minimum; the prosecutor may invite one kind
of departure while withholding authority for the other).
Rewards for assistance may be supplied not only
through motions under §5K1.1 but also via decisions not
to prosecute at all, or to dismiss charges after they have
been filed. All of these decisions are similar in kind and
therefore, *Wade* and *Melendez* conclude, are covered by
the same legal rule that curtails judicial oversight of
decisions to file or dismiss charges.

Exercises of prosecutorial discretion may be overseen
only to ensure that the prosecutor does not violate the

Constitution or some other rule of positive law. See *Wayte v. United States*, 470 U.S. 598 (1985); *In re United States*, 345 F.3d 450 (7th Cir. 2003) (a judge must dismiss a charge on the prosecutor's motion as part of a plea bargain unless the bargain violates a rule of law). The Court added in *United States v. Armstrong*, 517 U.S. 456 (1996), that judicial review of a prosecutor's discretionary choices is permissible only after the defendant has made a *prima facie* showing that impermissible considerations such as race have affected the prosecutor's decision. Discovery into the prosecutor's decision-making processes may follow, but must never precede, such a showing. *United States v. Bass*, 536 U.S. 862 (2002). And, if the prosecutor declines to comply, the remedy is to dismiss the indictment rather than hold an inquest.

Heath has not made a *prima facie* demonstration that the prosecutor has violated the Constitution or any statute or treaty. She has not even asserted this. (Recall that she wants to plead guilty on the plea agreement's terms; the judge, not the defendant, kicked off this proceeding.) No such claim would be tenable, because the prosecutor has yet to reach a decision. It follows that there is no basis for an inquiry of any kind, let alone for access to the Executive Branch's ongoing deliberations.

Every defendant contemplating a step as momentous as pleading guilty is entitled to enough information to make an intelligent decision. See *United States v. O'Neill*, 437 F.3d 654 (7th Cir. 2006). The district judge observed that motions under §5K1.1 are significantly less frequent in his jurisdiction than in the federal system as a whole—about 5% of all cases in the Southern District of Illinois, as opposed to 14.4% across the nation. See United States Sentencing Commission, *2006 Annual Report* 36. It is entirely appropriate for a judge to inform defendants and their lawyers about the rarity of §5K1.1 motions in a given district or in cases handled by a particular Assistant

United States Attorney. But when an informed defendant decides to take her chances or to make the best of a bad situation, a judge's belief that prosecutors should reward cooperation more frequently is not a good reason to reject a plea.

Heath agreed to a deal under which the United States holds discretion over whether to make a motion under §5K1.1. That it may have been possible for the United States to make a firm commitment (or agree to objective criteria for evaluating Heath's assistance) does not entitle the district court to treat the bargain as if such a commitment had been made. That step would not only intrude on the Executive Branch's constitutional authority but also disable the parties from reaching agreements that may make both sides better off. Told that it must make a firm commitment or none at all, the prosecutor might well choose "none at all," to the detriment of this defendant and the process of investigating and prosecuting other crimes. The deal Heath actually struck leaves matters to the prosecutor's discretion; judges must respect the agreement that the parties have reached. See *United States v. Artley*, 489 F.3d 813, 824–25 (7th Cir. 2007).

The judge's response to the petition for mandamus tells us that he is certain that Heath has revealed everything she knows and therefore should be rewarded. Yet, under *Wade* and the plea agreement, whether even complete disclosure is helpful enough to earn a lower sentence is an issue committed to the prosecutor, not the judge. Not that the judiciary can be confident that Heath has told all. Agents who have interviewed her—and who have other sources of information about the drug-distribution network in which she participated—are better situated to assess her candor. A prosecutor is entitled to be skeptical about a defendant's protestation that she has come clean. Even if Heath has been completely cooperative so far, it may

be sensible to hold out the lure of a §5K1.1 motion as a reason to provide that information on the stand at other persons' trials, and not just in private. The Executive Branch is entitled to adopt a hard-nosed negotiating and litigating strategy.

The petition for a writ of mandamus is granted. The district judge must rule on the motion for reconsideration without requiring access to information about ongoing investigations or deliberations within the Executive Branch. In resolving the motion for reconsideration, the district judge must be mindful of the principles we have discussed.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*