In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-3416

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

*v.*

GILBERT MANNING,

*Defendant-Appellant.*

Appeal from United States District Court for the
Southern District of Illinois.
No. 3:12-CR-30330 — **Nancy J. Rosenstengel**, *Chief Judge.*

ARGUED JUNE 3, 2021 — DECIDED JULY 22, 2021

Before MANION, WOOD, and BRENNAN, *Circuit Judges.*

WOOD, *Circuit Judge.* Gilbert Manning, a federal inmate
who is represented by counsel recruited for him by the district
court, appeals the denial of his request for compassionate re-
lease. The government asks us to affirm on the merits and also
argues that the district court impermissibly appointed and
compensated Manning's lawyer. The court did so pursuant to

the Southern District of Illinois's Administrative Order 265, which appoints the Federal Public Defender's Office and Criminal Justice Act panel attorneys to represent indigent prisoners in non-frivolous compassionate release cases. The government contends that Order 265 and the appointment and compensation of counsel in this case defy our precedent that there is no right to counsel in a sentence-modification proceeding. This question is not properly raised in this appeal, however, so we do not decide it. On the merits, we affirm the denial of Manning's motion as a sound exercise of discretion.

## I. Background

Manning pleaded guilty in 2013 to conspiracy to distribute and possess with intent to distribute marijuana, see 21 U.S.C. § 841(a)(1), (b)(1)(A)(vii), and distribution of marijuana, *id*. § 841(a)(1), (b)(1)(D). He was sentenced to 210 months' imprisonment and eight years' supervised release, but his prison term was later reduced to 168 months, based on changes to the sentencing guidelines, see 18 U.S.C. § 3582(c)(2); U.S.S.G. § 2D1.1. He has been serving his sentence at the Federal Correctional Institution Fort Dix in New Jersey and is scheduled for release in 2025.

In July 2020, Manning, pro se, moved for compassionate release based on his prediabetes and rheumatoid arthritis, together with the COVID-19 pandemic. Over the next three months, he supplemented the motion three times, including with information establishing his exhaustion of administrative remedies and a report that he had contracted COVID-19.

The district court appointed the Federal Public Defender's Office to represent Manning in his request for a reduced

sentence. The court explained that although under *United States v. Foster*, 706 F.3d 887 (7th Cir. 2013), it "lacks authority to appoint counsel for defendants seeking relief under the First Step Act," the Federal Public Defender is "willing" to represent defendants who may be eligible for compassionate release. The court therefore directed the clerk's office to notify the Defender of the motion and to ask the Defender, or a "designated Criminal Justice Act panel attorney," to appear within seven days. The court cited the Southern District's Administrative Order 265, which explains that the Federal Public Defender's Office is "willing to enter its appearance on behalf of all" pro se, indigent defendants who file non-frivolous compassionate release requests.

Soon after a federal defender appeared on Manning's behalf, she moved to withdraw and for the court to instead appoint a Criminal Justice Act ("CJA") panel member.[1] According to Order 265, the Public Defender's Office can give up to 40% of its compassionate-release cases to CJA-panel members, who are compensated up to $2,500. The court obliged. Manning's new attorney filed a notice that "it is counsel's determination that Manning's pro se motion requires no further supplementation … at this juncture." The government then argued that Manning's "managed medical conditions" were

---

[1] Under the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(a), district courts must adopt "a plan for furnishing representation for any person financially unable to obtain adequate representation." The Southern District of Illinois's plan creates a panel of private attorneys who are eligible to be appointed counsel under the CJA. The plan also allows for their compensation. See S.D. Ill. CJA Plan, available at https://www.ilsd.uscourts.gov/Forms/CriminalJusticeActPlan.pdf.

not extraordinary and compelling cause for a sentence reduction and that the factors under 18 U.S.C. § 3553(a) weighed against his release. Manning's lawyer filed a short reply emphasizing the severity of his prediabetes in light of the COVID-19 pandemic and arguing that any concern over whether Manning was dangerous could be managed with conditions such as home confinement or electronic monitoring.

The district court denied the motion, concluding that Manning had not demonstrated extraordinary and compelling reasons for a reduced sentence. Medical records revealed that Manning did not have any diagnosis of rheumatoid arthritis and that his prediabetes was not severe. Even if Manning suffered severely from these conditions, the court continued, neither is recognized by the Centers for Disease Control and Prevention as increasing a person's risk of severe illness from COVID-19.

## II. Discussion

### A. Appointment and Compensation of Counsel under Order 265

The government asks us to rule that the Southern District's official policy of appointing federal public defenders and CJA-panel members to represent indigent prisoners seeking compassionate release is unlawful. The government bases its argument largely on this court's decisions in *United States v. Foster*, 706 F.3d 887 (7th Cir. 2013), and *United States v. Blake*, 986 F.3d 756 (7th Cir. 2021), which hold that prisoners who seek lower sentences under 18 U.S.C. § 3582(c)(2) are not

entitled to appointed counsel at public expense.[2] According to the government, because Order 265 appoints federal defenders (who are paid salaries with public funds) and CJA-panel members (who receive up to $2,500 per compassionate-release case from public funds) to represent inmates seeking reductions under § 3582(c)(1), the Order unlawfully expends public funds to provide counsel for inmates seeking sentence reductions, in defiance of *Foster* and *Blake*.[3]

We do not reach the merits of these arguments, however, because this appeal is not the appropriate place to raise them.

As an initial matter, the government never objected in the district court to the appointment of counsel to represent Manning, so it arguably waived this challenge. See *In re Veluchamy*, 879 F.3d 808, 821–22 (7th Cir. 2018). True, this court occasionally, if reluctantly, considers a purely legal issue even when it was not raised earlier because the district court's particular

---

[2] The government says that *Blake* holds that there is no entitlement to counsel in the compassionate-release context, but that is imprecise. The inmate in *Blake* wanted appointed counsel to represent him in seeking a sentence reduction under 18 U.S.C. § 3582(c)(2)—that is, based on changes to the Sentencing Guidelines—not under § 3582(c)(1), which is the compassionate-release section.

[3] Other districts within this circuit have similar general orders appointing public defenders' offices to represent indigent prisoners with non-frivolous compassionate-release requests. See N.D. Ill. Gen. Order 20-0016 (Apr. 6, 2020); N.D. Ind. Gen. Order 2020-11 (Dec. 21, 2018); C.D. Ill. Order 20-mc-4011 (second amendment) (Oct. 14, 2020). None expressly permits paying CJA attorneys, but it is plausible that the local defenders' offices make use of panel attorneys for these motions under their own policies.

competence is not required to resolve it. See, *e.g., Bourgeois v. Watson*, 977 F.3d 620, 632 (7th Cir. 2020). But Manning argues, and we agree, that for two reasons it does not make sense to excuse the government's waiver here. First, the government offers no reason for failing to raise the challenge to the district court. As the government admits, before the entry of Order 265, it "generally advised [the Southern District] that it did not believe that the appointment of counsel at public expense in these matters was authorized by statute or consistent with Seventh Circuit precedent," and it has successfully raised the challenge in at least one other case. See *United States v. McCarvey*, No. 13-cr-30172, 2021 WL 1017246 (S.D. Ill. Mar. 17, 2021). Further, the issue was not contemplated by the appealing party here. Counsel was appointed solely for the purpose of arguing that Manning should receive compassionate release; as counsel says, neither he nor Manning "has ever been assigned the duty, or would expect the duty, of defending Administrative Order 265 or the district court's interpretation thereof." The defendant's interests and those of the district court do not align perfectly; the district court has institutional and efficiency concerns that it is not reasonable to expect an individual prisoner to defend.

Looking to waiver principles, however, presupposes that the government should have challenged the general order in a compassionate-release proceeding in the district court. That premise is likely incorrect. Administrative "orders have much the status of local rules, and the body entitled to decide whether a given rule … is inappropriate under the Rules Enabling Act, 28 U.S.C. § 2071–77, and FED. R. CRIM. P. 57, is the Judicial Council of the Circuit," which can review the concerns on application by the Executive Branch. *United States v. Zingsheim*, 384 F.3d 867, 870 (7th Cir. 2004); see also 28 U.S.C.

§ 322(d)(1), (d)(4) (tasking the Judicial Council with amending orders and modifying and abrogating rules). We understand the government to raise a facial challenge to Order 265. Though the government purports to take issue with the Order as applied to Manning, it does not assert that Manning's counsel was paid for his representation, and it does not seek to claw back any funds used to pay counsel in this case (or any other), or to strike his counsel's filings or remand the case for it to proceed without counsel. Those are the types of remedies that would be proper in an "as-applied" challenge. Rather, the government wants this court to rule that the process the Order creates is unlawful, and the forum for a facial challenge to Order 265 is the Judicial Council of the circuit. *Cf. Zingsheim*, 384 F.3d at 870 (courts can review order's legal status in the context of assessing its application to a party).

### B. Compassionate Release

Manning argues that the district court erred in concluding that his prediabetes, together with COVID-19, did not constitute an extraordinary and compelling reason for his early release. Although this condition is not recognized by the CDC as increasing a person's risk from the virus, Manning cites scientific studies outlining the danger. Manning further emphasizes that prisons in general are breeding grounds for infectious diseases, and FCI Fort Dix, the site of "the largest COVID-19 outbreak of any federal prison in the country," is especially risky.

The district court did not abuse its discretion in denying Manning's motion for compassionate release. See *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). In determining whether Manning had met his burden to establish "extraordinary and compelling reasons" for a sentence

reduction under 18 U.S.C. § 3582(c)(1)(A), see *United States v. Newton*, No. 20-2893, 2021 WL 1747898, at *1 (7th Cir. May 4, 2021), the court considered Manning's principal arguments and reasoned that they were insufficient to warrant a reduced sentence. See *id.* at *4. The court reasonably explained that there was no evidence Manning even had one of the health conditions—rheumatoid arthritis—that he says puts him at increased risk of complications if he contracts COVID-19. And although Manning has prediabetes, that condition is not severe (Manning's average blood sugar levels, the court explained, were only borderline prediabetic), nor is it recognized by the CDC as increasing a person's risk of death from COVID-19. Manning tells us on appeal that the CDC *should* list prediabetes as a potential vulnerability for COVID-19, but he did not make that argument to the district court and so likely waived it. See *United States v. Tjader*, 927 F.3d 483, 484 (7th Cir. 2019). He also points to other cases in which one or both of his conditions has been among the reasons that district courts granted early release. Given the fact-specific nature of the inquiry and this court's deference to the district courts' weighing of the evidence, however, that is insufficient to establish an abuse of discretion here.

AFFIRMED