In the

# United States Court of Appeals
## For the Seventh Circuit

No. 08-2240

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMES L. PATTERSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06-CR-624—**Ronald A. Guzman**, *Judge.*

ARGUED APRIL 17, 2009—DECIDED AUGUST 5, 2009

Before FLAUM, EVANS, and WILLIAMS, *Circuit Judges.*

FLAUM, *Circuit Judge.* James Patterson appeals several issues related to his sentence for violation of 18 U.S.C. § 2423(a), which prohibits transporting a minor in interstate commerce with intent that the minor engage in prostitution. Among the issues presented is one of first impression in this circuit: whether 18 U.S.C. § 2423(a) is a "crime of violence" such that application of the career offender guideline is appropriate in this case.

For the reasons explained below, we affirm the judgment of the district court except with regard to the district court's enhancement of Patterson's sentence for "use of a computer." On that issue we reverse and remand for further proceedings consistent with this opinion.

## I.  Background

### A.  Factual Background

In 2005, James Patterson, a forty-two year old man, met a fourteen year old girl (the "victim") in Memphis, Tennessee. The victim had run away from a group home and had no money. Patterson encouraged her to engage in prostitution. The victim began working as a prostitute in a Memphis crack house for a pimp named Larry Nelson. About two weeks later, Patterson asked the victim if she would like to travel to Chicago. He told her that in Chicago, prostitution was internet-based and that she would not have to engage in "street-walking" to solicit customers. Defendant's counsel admitted to the district court that defendant "held out" internet prostitution as "something more attractive" than what the victim had been doing at the time. The victim agreed to travel with Patterson to Chicago.

On October 31, 2005, Patterson drove the victim from Memphis to Schaumburg, Illinois. For two weeks, the victim worked as a prostitute for Patterson. During this time, the victim gave Patterson all of the money she earned and stayed in his hotel. Another minor female working as a prostitute for defendant's half-brother

posted prostitution advertisements for the victim on internet sites such as Craigslist. These advertisements contained naked photos of the victim. The other prostitute arranged the victim's calls to johns through the internet and drove her to calls as well.

Patterson used physical violence against the victim several times. On one occasion, Patterson shoved the victim against a wall and slapped her. On another occasion, Patterson punched the victim, knocking her off a chair, and stomped on her while she was on the floor. After this incident, Patterson told the victim to take a shower and prepare to work the street. On a call later that night, a john, who saw bruises on the victim, offered to "rescue her." The victim went to live with the man's son. From the son's house, she called her mother in Memphis. The victim's family had apparently been looking for her and had spread the word in Memphis that she was a missing and endangered child.

### B. Procedural Background

Patterson was charged with knowingly transporting a minor in interstate commerce with the intent that the minor engage in prostitution in violation of 18 U.S.C. § 2423(a). Defendant pled guilty pursuant to a written plea agreement. The agreement explained that the Guidelines "in effect at the time of sentencing" were to determine Patterson's sentence. The agreement anticipated that Patterson would have an offense level of 28 and a criminal history category of IV, which resulted in an "anticipated advisory Sentencing Guidelines range [of] 110

to 137 months' imprisonment." These calculations were "based on the facts now known to the government." Additionally, the agreement stated:

> Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or the applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

The agreement also stated, in another section, that "[d]efendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea."

During the plea colloquy, Patterson was placed under oath and stated that he was fully satisfied with his attorney's representation, had reviewed the plea agreement, understood all of the agreement's terms, and understood

the consequences of pleading guilty. The defendant told the district judge that he understood that the judge was not bound by the plea agreement. The court asked:

> Do you understand that I will not be able to determine the actual guideline sentencing range for your case until after you have pled guilty and a presentence report has been completed; because of that, the sentence calculation that I make may be different from what you and your attorney or even what the plea agreement contains. Do you understand that?
>
> A: Yes.

The original Presentence Investigation Report ("PSR") had not treated Patterson as a career offender under U.S.S.G. § 4B1.1 because the government and probation office did not know that Patterson's term of imprisonment for a 1983 conviction had ended within the last fifteen years, a requirement for counting an offense for the purpose of the career offender guideline. *See* U.S.S.G. §§ 4B1.1, cmt. n.1; 4B1.2, cmt. n.3; 4A1.2(e)(1). After filing the original PSR, the probation office learned from the Tennessee Department of Corrections that Patterson had been released within the last fifteen years for the 1983 conviction. Thus, after Patterson's plea colloquy, the probation office supplemented its original PSR to reflect its view that Patterson should be treated as a career offender on the basis of his conviction under 18 U.S.C. § 2423(a) and his 1983 and 1999 convictions. *See* U.S.S.G. § 4B1.1(a). Using the 2007 Guidelines, which were in effect at the time of Patterson's sentencing, the Supplemental PSR recommended a Guidelines range of 210 to

262 months. The Supplemental PSR also recommended applying, among others, offense characteristic enhancements for "unduly influenc[ing] a minor to engage in prohibited sexual conduct" and "use of a computer." *See* U.S.S.G. §§ 2G1.3(b)(2)(B); 2G1.3(b)(3).

After the probation office submitted the Supplemental PSR, defendant filed a pro se motion to withdraw his guilty plea, although he was represented by counsel at the time of the filing. In the motion, Patterson argued that his plea was not made knowingly or voluntarily. The district court held a hearing on defendant's motion. Defendant was represented by counsel at the hearing, and counsel expressed his opinion that Patterson's pro se motion had no merit.

The district court ruled that it would not consider the merits of the motion because it was not filed by counsel. The district court additionally stated that even if it had considered the merits, it would have denied it on the grounds that it "ha[d] no merit." The court informed Patterson that he could file a motion for substitution of attorneys if he wished. Despite the district court's ruling, Patterson stated at the hearing that his counsel "promised [him] a sentence that [he] didn't get" (although at the time of the hearing, he had not yet been sentenced). Defendant also said that he had only had ten minutes to look at the plea agreement before he pled guilty. However, the district court reminded Patterson that he had earlier stated under oath that he had reviewed the agreement and understood its terms, which defendant acknowledged.

The district court adopted the Supplemental PSR's Guidelines calculations and sentenced Patterson to 262 months in prison followed by five years of supervised release. The defendant did not ask the district court to vacate his plea at sentencing but did object to the Supplemental PSR's application of the career offender provision as well as the "undue influence" and "use of a computer" enhancements.

Patterson now appeals his sentence on a number of grounds.

## II. Discussion

### A. Evidentiary Hearing Regarding Plea Withdrawal

Patterson's first argument is that the district court should have held an evidentiary hearing with regard to his motion to withdraw his plea. The district court rejected Patterson's motion to withdraw his plea because it was filed pro se at a time when Patterson was represented by counsel; the district court also stated that the motion was meritless. The government argues that the district court was correct to reject Patterson's motion because it was never properly before the court and also because Patterson did not meet his burden of showing a fair and just reason for withdrawal of the plea.

Abuse of discretion is the standard of review for both a district court's denial of a motion filed pro se by a defendant represented by counsel, *see United States v. Chavin*, 316 F.3d 666, 671 (7th Cir. 2002) ("[W]hether a defendant may act as co-counsel along with his own attorney, is a matter within the discretion of the district

court.") (citing *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir. 1989)), and for a district court's denial of an evidentiary hearing, *see Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008).

The decision regarding whether to allow a defendant to represent himself when he is also represented by counsel is " 'solely within the discretion of the trial court.' " *Chavin*, 316 F.3d at 671 (quoting *Tutino*, 883 F.2d at 1141)). A defendant does not have a "right" to such an arrangement. *See United States v. Gwiazdzinski*, 141 F.3d 784, 787 (7th Cir. 1998) ("A defendant does not have an affirmative right to submit a pro se brief when represented by counsel.") (citation omitted); *see also United States v. Singleton*, 107 F.3d 1091, 1101 n.7 (4th Cir. 1997) (noting that "[t]he cases reiterating the principle that courts are not required to allow defendants to split the responsibilities of the representation with an attorney are myriad"). Indeed, this court has stated that such arrangements are disfavored. *Chavin*, 316 F.3d at 672.

Here, the district court rejected Patterson's attempt at self-representation and advised him that he could file a motion for substitution of counsel if he wished. In light of the district court's wide discretion to reject pro se submissions by defendants represented by counsel, and because the district court presented Patterson with an alternative avenue that Patterson declined to pursue, we conclude that the district court's denial of Patterson's motion without an evidentiary hearing was not an abuse of discretion.

However, even if Patterson had properly raised this issue through counsel, the district court would not have

abused its discretion by denying the motion without an evidentiary hearing. Federal Rule of Criminal Procedure 11 allows a defendant to withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). But a defendant who states at a plea colloquy that his plea was "freely and knowingly given . . . faces an uphill battle" in convincing a judge that his reasons for withdrawal are "fair and just" because representations made at a plea colloquy are under oath and are given a "presumption of verity." *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995). We have stated that district courts are "generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the [plea colloquy]." *Id*.

At the hearing on defendant's pro se motion to withdraw his plea, Patterson stated that his lawyer "promised [him] a sentence that [he] didn't get" and that he did not have enough time to review the plea agreement. While on their face, those reasons appear compelling, we have stated that "[c]laims of involuntariness or confusion that in the abstract seem like sufficient reasons to allow a defendant to withdraw his plea, or at least look into the matter further, may be insufficient in the context of a record containing substantial indications of voluntariness and lack of confusion." *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992); *see also Messino*, 55 F.3d at 1248 (citation omitted). "One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing." *Trussel*, 961 F.2d at 689-90. Here,

defendant's reasons to withdraw his plea plainly contradicted his sworn statements during the plea colloquy. Moreover, Patterson's attorney, who was present at the hearing, told the court he believed the pro se motion lacked merit. It is also worth noting that defendant did not indicate to the district court (and has not indicated on appeal) that he would have presented any other evidence of involuntariness or confusion at a putative evidentiary hearing. Thus, even if defendant had properly requested an evidentiary hearing regarding his request to withdraw his guilty plea, based on these facts, and in light of the heavy burden shouldered by a defendant when requesting to withdraw a guilty plea, we could not conclude that the district court abused its discretion when it denied an evidentiary hearing.

## B. Patterson's Plea

Patterson argues that, even aside from his request for an evidentiary hearing, the district court should have vacated his guilty plea because his plea agreement was based on the parties' "mutual mistake" regarding the application of the career offender guideline, or, in an alternative reading of the same events, because the government "breached the agreement." The government maintains that Patterson's "underestimat[ion of] his sentence" at the time he entered his plea is not a valid reason to permit him to withdraw his plea.

Because, as discussed above, Patterson never properly requested that the district court vacate his guilty plea, we review for plain error. *Puckett v. United States*, ___ U.S. ___,

129 S.Ct. 1423, 1428 (2009) (finding that Rule 52(b)'s plain-error test applies to a forfeited claim that the government failed to meet its obligations under a plea agreement). Under plain error review, the defendant must establish (1) an error (2) that was plain, (3) affected the defendant's substantial rights, and (4) seriously affected the fairness, integrity, or public reputation of the judicial proceedings. *Id.* at 1429; *United States v. Julian*, 427 F.3d 471, 481 (7th Cir. 2005).

Our precedent establishes that plea agreements are governed by ordinary contract principles. *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996). In *Barnes*, we stated that there must be a "meeting of the minds" on all essential elements of a guilty plea in order for the plea to be valid, and that, "[a]t least in theory, ambiguity in an essential term or a mutual mistake about the meaning of such a term can invalidate [a plea]." *Id*. As in the instant case, in *Barnes*, the defendant argued that his plea was invalid because neither he, the prosecutor, nor the court realized at the time of the plea colloquy that he would be sentenced as a career offender. *Id*. Though the *Barnes* court acknowledged that there must be a meeting of the minds regarding the agreement's essential terms, it found that the defendant's guilty plea, which was made pursuant to then-Rule 11(e)(1)(B), did not contemplate the actual punishment as an essential term of the agreement. *Id*. Rather, the parties left "the determination of a sentence to the discretion of the district court, as guided by the sentencing guidelines and by the applicable criminal statutes." *Id*. Thus, the court concluded that the plea agreement was valid and enforceable.

This case is similar to *Barnes*. While it is true that Patterson's plea agreement "anticipated" a sentence lower than the one he ultimately received, the agreement stated several times that it did not ultimately control the sentence imposed by the district court. Specifically, the agreement stated that its Guidelines calculations were "non-binding predictions upon which neither party is entitled to rely" and also that the defendant could not withdraw his plea if the district court rejected the agreement's Guidelines calculations. Moreover, the agreement explicitly stated that it is not a Fed. R. Crim. P. 11(c)(1)(C) plea, in which the district court is bound by the sentencing recommendations contained in the agreement. *See Barnes*, 83 F.3d at 938 (noting that agreements made under Rule 11(e)(1)(C)—a previous version of Rule 11(c)(1)(C)—would include the defendant's punishment as an essential term). It is thus clear here, as in *Barnes*, that the defendant's actual sentence was not an essential term of the agreement, so the agreement cannot be voided because of "mutual mistake" with regard to the sentence imposed.

Patterson also argues that the government breached the agreement by arguing for a higher sentence after it learned that Patterson was possibly eligible for sentencing as a career offender. However, the government never agreed to not argue for a different sentence. The plea agreement specifically stated that "[d]efendant understands that further review of the facts or the applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case." While Federal Rules of Criminal Procedure 11(c)(1)(B) and (C) allow formation of an agreement that

binds the government, Patterson's agreement was not made pursuant to these provisions. Accordingly, the government did not breach the terms of the plea agreement. *See United States v. Linder*, 530 F.3d 556, 564-65 (7th Cir. 2008) (rejecting argument that government breached the plea agreement by advocating for an enhancement where agreement was not made pursuant to Federal Rules of Criminal Procedure 11(c)(1)(B) and (C)).

## C. Career Offender Enhancement

The district court determined that Patterson was a career offender under the Sentencing Guidelines. Predicate to this conclusion was the district court's finding that Patterson's conviction for transporting a minor in interstate commerce for the purpose of prostitution was a "crime of violence" under U.S.S.G. § 4B1.2. Patterson argues that 18 U.S.C. § 2423(a) is not a crime of violence under the Supreme Court's decision in *Begay v. United States*, ___ U.S. ___, 128 S.Ct. 1581 (2008), and that his sentencing as a career offender was therefore error. The government argues that 18 U.S.C. § 2423(a) is a crime of violence because it presents a great risk of physical injury to its victims and is a purposeful, aggressive, and violent crime.

We review the district court's interpretations of the Sentencing Guidelines de novo. *United States v. Howard*, 352 F.2d 818, 831 (7th Cir. 2001).

The Sentencing Guidelines define a crime of violence as:

Any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2 (2006). The government claims that Patterson's offense falls under the second clause of the second prong of this definition (sometimes called the "residual clause") because it "involves conduct that presents a serious potential risk of physical injury to another." To determine whether a conviction qualifies as a crime of violence, courts use a "categorical approach," under which the Court looks to the statutory elements of the offense and not to the particular facts of the underlying conviction. *See Taylor v. United States*, 495 U.S. 575, 600 (1990).

The Supreme Court's decision in *Begay* analyzed whether driving under the influence should be considered a crime of violence under the Armed Career Criminal Act (ACCA). *See Begay*, 128 S.Ct. at 1583.[1] The Court first determined that the example crimes listed in

---

[1] Because the ACCA uses nearly identical language to the career offender guideline, this court has considered *Begay* to be extremely persuasive authority regarding § 4B1.2. *See, e.g., United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008) (citing *United States v. Upton*, 512 F.3d 394, 404 (7th Cir. 2008); *United States v. Howze*, 343 F.3d 919, 924 (7th Cir. 2003)).

the first clause of the second prong of the statute ("burglary, arson, extortion, and crimes involving the use of explosives") limited the types of crime covered by the residual clause (crimes "that present[ ] a serious potential risk of physical injury to another"). The Court reasoned that the residual clause covered only "crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves." *Id.* at 1587. To help determine whether the defendant's crime is similar in kind to the enumerated examples, *Begay* examined whether the crime "typically involve[s] purposeful, 'violent,' and 'aggressive' conduct." The Court found that drunk driving was more appropriately understood as a crime of negligence or recklessness rather than one of purpose and deliberation and therefore concluded that drunk driving was not a crime of violence. *Id.*

The Supreme Court recently applied the *Begay* test in *Chambers v. United States*, ___ U.S. ___, 129 S.Ct. 687 (2009). In *Chambers,* the Supreme Court held that a convict's "failure to report" is not a crime of violence. *Id.* at 691. Although the government claimed that failure to report should be understood as a crime of violence because individuals who fail to report are likely to use violence to avoid recapture, the Court held that failure to report was not a crime of violence because "the crime amounts to a form of inaction, a far cry from the purposeful, violent, and aggressive conduct potentially at issue when an offender uses explosives against property, commits arson, burgles a dwelling or residence, or engages in certain forms of extortion." *Id.* at 692. The *Chambers* Court did not definitively indicate whether violence that may attend

a crime, but is not an element of the crime, should be considered in determining whether to treat a statutory violation as a "crime of violence." The Court instead stated that "even if we assume for argument's sake the relevance of violence that may occur long after an offender fails to report, we are not convinced [by the data presented by the government supporting that proposition in this case]." *Id.* (surveying the data provided by the government and concluding that it showed a relatively low incidence of violence attending arrests of individuals who had failed to report).

While there have been several circuit court decisions prior to *Begay* holding that Section 2423(a) was a crime of violence, *see, e.g., United States v. Curtis*, 481 F.3d 836, 838-39 (D.C. Cir. 2007); *United States v. Carter*, 266 F.3d 1089, 1090-91 (9th Cir. 2001), only one court has had occasion to consider the question after *Begay*, *see United States v. Williams*, 529 F.3d 1 (1st Cir. 2008), *cert. denied*, ___ U.S. ___, 129 S.Ct. 1580 (2009). In *Williams*, the First Circuit focused first on the risk of harm accompanying a violation of 18 U.S.C. § 2423(a), finding that "indecent sexual contact crimes perpetrated by adults against children categorically present a serious risk of physical injury." *Id.* at 5. The court was unpersuaded by the defendant's argument that his crime was not violent because he was not "sexually active" in the commission of the offense but rather, "merely facilitated others' sexual contact with the minor." *Id.* Rather, the court found that by transporting the minor with the intent that the minor engage in prostitution, the defendant "placed the minor in harm's way and led ineluctably to a sex act . . .

between the minor and an older man unconcerned with her welfare." *Id.* The court also noted that the commercial aspect of 18 U.S.C. § 2423(a)—as opposed to simple seduction of a minor—increased the level of risk to the minor because it increased the risk of physical abuse from multiple partners and the risk of contracting a sexually transmitted disease. *Id.* Finally, *Williams* noted that *Begay* did not provide much guidance for its decision.

> Because a new test is introduced and because the Court's decision is itself close, it is hard to be absolutely certain how a majority of the Justices would apply the test to the crime at issue here—a crime that falls neither within the safe harbor of offenses with limited scienter requirements and uncertain consequences (like DUI), nor among those that have deliberate violence as a necessary element or even as an almost inevitable concomitant. Adjectives like "purposeful" and "aggressive" denote qualities that are ineluctably manifested in degree and appear in different combinations; they are, therefore, imprecise aids.

*Id.* at 7. Despite the ambiguity contained in *Begay*, however, the First Circuit found that, "[u]nlike DUI, [a violation of 18 U.S.C. § 2423(a)] is purposeful and the perpetrator is aware of the risks that the prostituted minor will face" and that "the crime is implicitly (and sometimes explicitly) aggressive, and coercion of the minor is virtually inherent." *Id.*

Title 18, Section 2423(a) makes it illegal to "knowingly transport[ ] an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent

that the individual engage in prostitution." 18 U.S.C. § 2423(a). Defendant argues that transportation of a minor in interstate commerce with the intent she engage in prostitution is not "similar" in kind to the crimes listed in *Begay* (burglary of a dwelling, arson, extortion, and crimes involving explosives). He claims that the example crimes all suggest the use of force or violence, which 18 U.S.C. § 2423(a) does not require. Patterson also argues that the government's emphasis on the social ills associated with prostitution is misplaced. He points out that 18 U.S.C. § 2423(a) does not punish prostitution, per se, and notes that a violation of the statute does not even require that prostitution take place.

The government argues that 18 U.S.C. § 2423(a) prohibits purposeful, aggressive and violent conduct and therefore is similar in kind to the crimes enumerated in the statute. First, the government says that the crime is "purposeful" because it requires the perpetrator to knowingly transport a minor to another state as well as intend that the minor to engage in prostitution. The crime is therefore "deliberate," unlike the strict liability offenses contrasted in *Begay*, in which "the offender need not have had any criminal intent at all." *Begay*, 128 S.Ct. at 1586-87. Second, the government contends that 18 U.S.C. § 2423(a) contemplates "aggressive" conduct because commission of the crime puts the perpetrator into a position of power over the minor such that an element of coercion is inherent in the crime. The government claims that the crime, in this way, is "analogous to kidnaping," which the commentary to U.S.S.G. § 4B1.2 lists as an example of a crime of violence. *See* U.S.S.G. § 4B1.2 cmt n.1. (However,

kidnaping requires that the defendant use force to prevent the victim from escaping, an element not required for a conviction under 18 U.S.C. § 2423(a).) Finally, the government argues that 18 U.S.C. § 2423(a) is a "violent" offense because the perpetrator must intend the minor to engage in prostitution and therefore, according to the government, "know[s] that the minor will most likely be raped, assaulted, or abused by pimps and customers."

We agree with the government that the crime at issue is "purposeful" and "aggressive." The closest question is whether a violation of 18 U.S.C. § 2423(a) is "violent."[2] On the one hand, Patterson is correct that the statute does not contain as an element any use of violence or force. On the other hand, the government is correct that violation of the statute creates a significant risk of violence against the victim by the perpetrator as well as third parties. Ultimately, we are persuaded by the government's position that the risk of violence which attends a violation of 18 U.S.C. § 2423(a) justifies its classification as "violent" and that 18 U.S.C. § 2423(a) is therefore "similar in kind" to the Guideline's enumerated crimes. While the Supreme Court has not definitively indicated whether "attendant risks" should be taken into account when analyzing whether a crime is similarly violent, *see Chambers*, 129 S.Ct. at 692 (assuming "for the sake of argument" that attendant risk of violence was relevant),

---

[2] Indeed, the aim of our inquiry is to determine whether Section 2423(a) is a "crime of violence."

consideration of this factor would appear to be appropriate in light of the fact that the second clause of U.S.S.G. § 4B1.2(2) itself refers to the "potential risk" inherent in crimes of violence. *See* U.S.S.G. § 4B1.2(2) (a "crime of violence" is "burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that *presents a serious potential risk of physical injury to another*") (emphasis added).

Consideration of risks attendant to commission of a crime is also supported by U.S.S.G. § 4B1.2(2)'s explicit enumeration of burglary as a crime of violence. Like Section 2423(a), burglary does not require the use of force or violence.[3] But the Supreme Court reasoned in *Taylor* that Congress included burglary among the "crimes of violence" in the ACCA because

> Congress thought that certain general categories of property crimes . . . *so often presented a risk of injury to persons*, or were so often committed by career criminals, that they should be included in the enhancement statute even though, considered solely in terms of their statutory elements, they do not necessarily involve the use or threat of force against a person.

*Taylor*, 495 U.S. at 597. Likewise here, a violation of 18 U.S.C. § 2423(a) does not require violent conduct, but it presents a substantial risk that violence will occur. Moreover, we agree with our colleagues in the First Circuit,

---

[3] Common law burglary is defined as "breaking and entering another's dwelling at night with the intent to commit a felony." *Black's Law Dictionary* (8th ed. 2004).

that it is "surpassingly difficult to see how burglary could be treated as a violent crime yet child trafficking exempted." *See Williams*, 529 F.3d at 8.

A violator of 18 U.S.C. § 2423(a) engages in purposeful conduct that exposes the crime's victim to a foreseeable risk of violence, physical injury, and disease. We therefore conclude that 18 U.S.C. § 2423(a) is "similar in kind" to the enumerated crimes in U.S.S.G. § 4B1.2(2) and is a crime of violence for purposes of the Sentencing Guidelines. *See Begay*, 128 S.Ct. at 1587; *United States v. Templeton*, 543 F.3d 378, 380 (7th Cir. 2008).

## D. "Undue Influence" and "Use of a Computer" Sentence Enhancements

Patterson also objects to the district court's enhancement of his sentence for "Undue Influence" and "Use of a Computer." When reviewing a district court's application of sentencing enhancements, we review the district court's legal interpretations de novo, *United States v. Katalinic*, 510 F.3d 744, 746 (7th Cir. 2007), and its factual findings for clear error, *United States v. Bryant*, 557 F.3d 489, 500-01 (7th Cir. 2009). The clear error standard is significantly deferential and an appellate court "may only reverse a factual finding under this standard when it is left with a 'definite and firm conviction that a mistake has been committed.'" *United States v. Gerstein*, 104 F.3d 973, 980 (7th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)) (other citations omitted).

**1. Undue Influence**

Sentencing Guideline § 2A3.2(b)(2)(B) requires a two level enhancement where a participant "unduly influenced the victim to engage in prohibited sexual conduct." The commentary to the Guideline instructs courts to closely consider the particular facts of the case to determine whether a "participant's influence over the victim compromised the voluntariness of the victim's behavior." U.S.S.G. § 2A3.2, cmt. n.3. This court has stated that the defining characteristic of undue influence is that it involves "a situation where the 'influencer' has succeeded in altering the behavior of the target." *U.S. v. Mitchell*, 353 F.3d 552, 557 (7th Cir. 2003).

Here, the district court applied the enhancement because the defendant "was the one" or "was one of the people" who helped involve the victim with prostitution. This finding was supported by the record. The defendant was a forty-two year old man and the victim was a fourteen year old girl at the time of the crime. The victim testified to the grand jury that she had never worked in prostitution before the defendant encouraged her to try it. Moreover, the victim was destitute and penniless when Patterson began urging her to travel to Chicago with him to engage in internet-based prostitution, making her more vulnerable to his influence.

Because the record supports the district court's application of the enhancement, and because there is no basis for a definite and firm conviction that a mistake has been committed, we affirm the district court's application of the "undue influence" enhancement.

### 2. Use of a Computer

Patterson argues—and the government concedes—that the district court erred when it applied the U.S.S.G. § 2G1.3(b)(3) enhancement for "use of a computer."

Under this provision of the Sentencing Guidelines, a defendant's offense level is increased two levels:

> [i]f the offense involved the use of a computer or an interactive computer service to . . . entice encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor . . . .

U.S.S.G. § 2G1.3(b)(3). The commentary, however, further provides that "[s]ubsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor." *Id*. § 2G1.3 cmt. n. 4. In this case, no computers were used to "communicate directly" with the victim or the victim's custodian, so the enhancement does not apply. We therefore reverse and remand with regard to this enhancement in order to ensure that it played no part in Patterson's sentence.

### E. Use of the 2007 Sentencing Guidelines

Finally, Patterson argues that the district court's use of the 2007 Sentencing Guidelines to calculate his sentence violated the ex post facto clause of the Constitution. Patterson never raised this argument before the district court, so we review for plain error. *See United States v. Baretz*, 411 F.3d 867, 875 (7th Cir. 2005).

Patterson's argument is foreclosed by *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), which held that a change in the Sentencing Guidelines that expands the guidelines range for a crime does not render application of the later-Guidelines an ex post facto law. Defendant argues that *Demaree* did not take *Kimbrough v. United States*, 552 U.S. 85 (2007) or *Gall v. United States*, 552 U.S. 38 (2007) into account. However, the holding of *Demaree* has been applied after *Kimbrough* and *Gall*, *see, e.g.*, *United States v. Krasinski*, 545 F.3d 546, 552 (7th Cir. 2008), and does not contradict those decisions. Defendant's other argument, notwithstanding *Demaree*, is that offenders who win their sentencing appeals "run the risk of a remand for a significantly longer sentence" under a new version of the Guidelines. However, as the government points out, 18 U.S.C. § 3742(g)(1) directs that defendants who win their sentencing appeals be resentenced under the Guidelines "in effect on the date of the previous sentencing."

Because Patterson has presented no compelling reason to revisit *Demaree*, and because his argument regarding the potential for higher sentences on remand has no merit, we reject his contention that the district court plainly erred by applying the 2007 Guidelines.

### III. Conclusion

For the reasons explained above, we AFFIRM the judgment of the district court except with regard to the "use of a computer" sentence enhancement. With regard to that

issue, we REVERSE and REMAND for further proceedings consistent with this opinion.