**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JAMES A. JACKSON,
*Defendant-Appellant.*

No. 11-30147

D.C. No.
3:09-cr-00170-MO-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted
July 12, 2012—Portland, Oregon

Filed October 11, 2012

Before: Betty B. Fletcher and Harry Pregerson,
Circuit Judges, and Consuelo B. Marshall,
Senior District Judge.*

Per Curiam Opinion

*The Honorable Consuelo B. Marshall, Senior District Judge for the U.S. District Court for the Central District of California, sitting by designation.

12239

## COUNSEL

Robert A. Weppner, Portland, Oregon, for appellant James Albert Jackson.

Kelly A. Zusman, Assistant United States Attorney, Portland, Oregon, for appellee United States of America.

## OPINION

PER CURIAM:

Defendant-Appellant James Albert Jackson ("Jackson") appeals the district court's denial of his motion to dismiss the indictment based on the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162, and the use of a two-level sentencing enhancement for use of a computer. This court has jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

Appellant James Albert Jackson ("Appellant") met a 14-year-old minor, referred to as AK, on the streets of Seattle,

Washington, where AK was engaged in prostitution and cocaine distribution. After giving AK alcohol and having sex with her multiple times, Appellant convinced AK to move with him to Portland, Oregon so the two could sell ecstacy.

Once in Portland, Appellant told AK that she would have to prostitute herself to pay for their motel room. Appellant beat and choked her during this first night in Portland. For the next three months, AK earned approximately $400-$600 per day as a prostitute and gave her earnings to Appellant. Appellant asked co-defendant Donnico Johnson and Johnson's prostitute, Lisa Miles, to take and post photos of AK on an online advertisement on the website craigslist.com.

After AK was arrested twice for prostitution, she told the authorities about Appellant and co-defendant Johnson, who were then arrested. Appellant was originally charged on May 6, 2009, and arrested in Texas on May 11, 2009. A superseding indictment was filed on June 24, 2009. Appellant was charged with "sex trafficking" in violation of 18 U.S.C. §§ 1591(a), (b)(1). Specifically, Appellant was charged under these sections with "knowing that force, fraud, and coercion would be used to cause [a minor] 'A.K.' to engage in commercial sex acts . . . [he] did, in and affecting interstate commerce, recruit, entice, harbor, transport, provide and obtain by any means, 'A.K.'; and . . . did benefit, financially . . . from participating in a venture which engaged in commercial sex acts."

Appellant moved to continue the trial date multiple times in 2009, which the trial court granted each time. On January 20, 2010, Appellant's attorney filed a motion for a competency hearing as to his client. On January 29, the district court ordered that Appellant undergo a competency evaluation by a local psychologist to be agreed upon by counsel for the parties. On March 1, Appellant's attorney filed an affidavit regarding Appellant's competency and the competency hearing convened. The district court found Appellant incompetent

to assist in his own defense on March 4, 2010, and ordered that "trial proceedings in this matter pertaining to defendant James Albert Jackson are hereby suspended pending the completion of the § 4241 evaluation . . . ."

The court ordered that "the Attorney General shall hospitalize [Appellant] in a suitable facility for a reasonable period of time, not to exceed four months, as is necessary to determine if there is a substantial probability that in the foreseeable future Mr. Jackson will attain the capacity to permit trial proceedings . . . ." The order also instructed "that the U.S. Marshal's Service shall take such reasonable measures to ensure that the travel and transportation of defendant James Albert Jackson to the custody of the Attorney General shall be conducted in a reasonable manner and within a reasonable time period."

The parties and the court apparently discussed transport issues at a May 10, 2010 status conference, but the conference was not reported. Appellant filed a motion to dismiss on July 15, 2010 after Appellant still had not been transferred to a federal medical center on the grounds of the Speedy Trial Act, 18 U.S.C. §§ 3161, 3162. The record does not contain evidence as to the reason for the delay in transferring Appellant. Within six days of filing his motion to dismiss, Appellant was transported from Oregon to the Bureau of Prison's medical facility in Springfield, Missouri. The court denied the motion on September 17, 2010 without oral argument.

A competency hearing was held on December 14, 2010, at which the district court found Appellant competent and set a new trial date. Appellant requested and was granted another continuance of the trial on January 4, 2011. Appellant pleaded guilty unconditionally to the first count without a plea bargain on March 3, 2011. The government moved to dismiss the remaining five counts at a June 3, 2011 sentencing hearing. The district court imposed a 480-month sentence, plus five

years of supervised release, which included a two-level sentence enhancement for use of a computer.

## II.  APPELLANT WAIVED HIS RIGHT TO APPEAL THE DENIAL OF HIS MOTION TO DISMISS

We review de novo issues involving waiver, *United States v. Pacheco-Navarette*, 432 F.3d 967, 970 (9th Cir. 2005), and the district court's denial of a motion to dismiss for noncompliance with the Speedy Trial Act, *United States v. Pena-Carrillo*, 46 F.3d 879, 882 (9th Cir. 1995).

**[1]** An unconditional guilty plea waives all nonjurisdictional, antecedent defects. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea. . . ."); *United States v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005) ("[I]t is well-settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and cures all antecedent constitutional defects."). This principle applies to Speedy Trial Act challenges. *See, e.g., United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) ("By pleading guilty, Bohn waived his right to assert a violation of the Speedy Trial Act. . . . The right to a speedy trial under the Speedy Trial Act is nonjurisdictional.").

This Court maintains jurisdiction to consider the appeal, but typically will dismiss the appeal when the government properly and timely raises the waiver. *See, e.g., United States v. Jacobo Castillo*, 496 F.3d 947, 953-54 (9th Cir. 2007) ("We recently reached a similar conclusion in determining that Federal Rule of Appellate Procedure 4(b) is a forfeitable, nonjurisdictional claim-processing rule. . . . We ultimately

dismissed the appeal, however, because we found that the government had properly raised the untimeliness argument, and under the rules we were required to dismiss.") (en banc).

**[2]** Appellant was represented by counsel in the district court. Because the plea was unconditional despite the availability of a conditional plea pursuant to Federal Rule of Criminal Procedure Rule 11(a)(2), Appellant has waived his right to appeal non-jurisdictional, antecedent defects including his right to assert a violation of the Speedy Trial Act. We therefore affirm the district court's denial of Appellant's Motion to Dismiss based on the Speedy Trial Act.

## III. THE TRIAL COURT COMMITTED NO ERROR IN ENHANCING APPELLANT'S SENTENCE FOR USE OF A COMPUTER

We review de novo a district court's interpretation and application of the Sentencing Guidelines. *United States v. Nielsen*, 371 F.3d 574, 582 (9th Cir. 2004); *United States v. Velasco-Medina*, 305 F.3d 839, 850 (9th Cir. 2002). When a defendant raises an issue on appeal that was not raised before the district court, however, "his claim of error is subject to a limited appellate review for plain error . . . . Under that review, relief is not warranted unless there has been (1) error, (2) that is plain, and (3) affects substantial rights." *Jones v. United States*, 527 U.S. 373, 389 (1999). The Ninth Circuit will "reverse for plain error only if an error was obvious, affected substantial rights, and a miscarriage of justice would otherwise result." *United States v. Doss*, 630 F.3d 1181, 1193 (9th Cir. 2011) (as amended).

First, we find that Appellant did not raise this specific argument at the district court. Ninth Circuit precedent requires that a specific argument clearly be raised in the district court. *See, e.g., United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995) ("A challenge to an adjustment of an offense level must be raised *specifically* at sentencing in order to afford the dis-

trict court an opportunity to correct any potential error."); *United States v. Gomez-Norena*, 908 F.2d 497, 500 (9th Cir. 1990) ("Thus, a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, . . . but also by making the *wrong* specific objection.").

While Appellant objected to the computer-use enhancement in his Sentencing Position Paper, he did so on the grounds that Appellant's involvement with the use of a computer was incidental and vicarious in nature because it was his co-defendant, and not Appellant himself, who used the computer.[1] Appellant did not raise the specific Guideline-interpretation argument that he now raises on appeal. We therefore apply a plain-error standard.

**[3]** The district court enhanced Jackson's sentence by two levels because he had allegedly used a computer to facilitate the commission of the prohibited sex trafficking. The Federal Sentencing Guidelines state:

> If the offense involved the use of a computer or an interactive computer service to (A) persuade, induce, entice, coerce, or facilitate the travel of, the minor to engage in prohibited sexual conduct; or (B) entice, encourage, offer, or solicit a person to engage in prohibited sexual conduct with the minor, increase by 2 levels.

U.S.S.G. § 2G1.3(b)(3). Part (B) of § 2G1.3(b)(3) would seemingly apply to the facts of this case because it contemplates using a computer to entice or solicit a third party—the "person"—to engage in prohibited sexual conduct with the minor. The Commentary to this Guideline indicates, however, that § 2G1.3(b)(3) would not apply to the facts of this case

---

[1]Appellant did not brief before this Court this argument regarding the incidental and vicarious nature of the use of the computer.

because the computer was not used to communicate directly with the minor or her custodian:

> Subsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor. Accordingly, the enhancement in subsection (b)(3) would not apply to the use of a computer or an interactive computer service to obtain airline tickets for the minor from an airline's Internet site.

USSG § 2G1.3 cmt. n. 4.

This Circuit has not yet ruled on whether the plain language of subsection (B) of USSG § 2G1.3(b)(3) is inconsistent with the Application Note that follows the Guideline. We look to other circuits for guidance.

The Seventh Circuit considered a similar fact pattern and found the commentary to be authoritative. In *United States v. Patterson*, 576 F.3d 431 (7th Cir. 2009), *cert. denied*, 130 S.Ct. 1284 (2010), the defendant brought a 14-year-old from out of state to Illinois so that she could work as a prostitute. Another female working as a prostitute for the defendant's half-brother posted prostitution advertisements for the victim on internet sites such as craigslist.com. *Patterson*, 576 F.3d at 434. The Seventh Circuit ruled that the enhancement was improper because there was no direct computer communication with the minor. *Id*.

The government here attempts to distinguish this case from *Patterson* by noting that the ads in *Patterson* were placed on the computer "by a third party" and that the government in *Patterson* conceded on appeal that the use-of-a-computer enhancement was improper. The Seventh Circuit did not rule based on these factors, and instead held that despite that lan-

guage of subsection (B), "[t]he commentary . . . provides that '[s]ubsection (b)(3) is intended to apply only to the use of a computer or an interactive computer service to communicate directly with a minor or with a person who exercises custody, care, or supervisory control of the minor.' " *Patterson*, 576 F.3d at 443 (quoting USSG § 2G1.3 cmt. n. 4). "In this case, no computers were used to 'communicate directly' with the victim or the victim's custodian, so the enhancement does not apply." *Id.*[2]

**[4]** If this Court were to find that the plain language of subsection (B) of USSG § 2G1.3(b)(3) is inconsistent with the Application Note that follows the Guideline, the plain language of the Guideline would control. "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it . . . is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993). We need not decide whether the plain language of subsection (B) of USSG § 2G1.3(b)(3) is in fact inconsistent with the Application Note that follows the Guide-

---

[2]The Eleventh Circuit considered a similar situation in an unpublished opinion and opted not to make a finding as to the applicability of the sentence enhancement. *See United States v. Madkins*, 390 F. App'x 849, 852 (11th Cir. 2010). Considering the argument under a plain error standard, the court found that regardless of the guideline's applicability, there was no showing that the district court's possible error affected the defendant's substantial rights:

> Although a persuasive case has been made that the commentary is at odds with the plain language of this enhancement, we need not decide whether the commentary is inconsistent with or a plainly erroneous reading of the guideline, for the case can be decided on a narrower ground. Madkins has not shown that this error affected his substantial rights. Nothing in the record suggests that the district court would have imposed a different sentence absent this enhancement. At most, the impact of any revision to Madkins's guideline range is speculative, and Madkin cannot carry his burden to show prejudice or a miscarriage of justice.

*Id.*

line, as this case can be decided on narrower grounds. We hold that the district court did not commit any obvious or plain error in this case. In the absence of controlling authority stating otherwise, a district court could reasonably find that an inconsistency does exist and interpret the plain language of subsection (B) of USSG § 2G1.3(b)(3) to apply to the facts of this case. We leave district courts in this Circuit with the discretion, however, to decide whether this Application Note creates an inconsistency with the plain language of subsection (B) of USSG § 2G1.3(b)(3).

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Jackson's motion to dismiss the indictment and AFFIRM Jackson's conviction. We also AFFIRM the district court's sentencing enhancement for use of a computer. The judgment of the district court is AFFIRMED.